5 F.3d 177
 85 Ed. Law Rep. 999
 Jennifer KISSINGER, Plaintiff-Appellant,
v.
BOARD OF TRUSTEES OF the OHIO STATE UNIVERSITY, COLLEGE of
VETERINARY MEDICINE, et al., Defendants-Appellees.
 No. 92-3360.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 16, 1992.
Decided Sept. 23, 1993.
 
 Kathaleen B. Schulte (argued), Spater, Gittes, Schulte & Kolman, Columbus, OH, Gary L. Francione (briefed), Rutgers University Law School, Newark, NJ, for plaintiff-appellant.
 James E. Pohlman (briefed), Kathleen M. Trafford (argued), Porter, Wright, Morris & Arthur, Columbus, OH, for defendants-appellees.
 Before: KENNEDY, MARTIN, and SUHRHEINRICH, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Jennifer Kissinger appeals the district court's refusal to award attorneys' fees under 42 U.S.C. Sec. 1988. She sued Ohio State University to force a change in its veterinary-medicine curriculum, but the parties reached a settlement. We affirm the district court's refusal to award attorneys' fees because Ohio State was not required by federal law to alter its curriculum to accommodate Kissinger's religious beliefs.
 
 
 2
 Jennifer Kissinger enrolled in the College of Veterinary Medicine at Ohio State University. When she was admitted, the Admission Acceptance Form stated,
 
 
 3
 The faculty of the College of Veterinary Medicine believe that the use of live animals in the teaching program is essential. The use of animals is reviewed by a faculty committee, which considers the issues of humane treatment, animal rights, learning experience and achievement of educational objectives. Objection to the use of live animals will not be grounds for excuse from class.
 
 
 4
 During the second year of her training, Kissinger requested that the College allow her to take an alternate program to the College's required course in veterinary surgery, Operative Practice and Techniques, a third-year course. Operative Practice is a course for the study of veterinary surgical techniques in which, among other learning activities, healthy animals are anesthetized, operated upon, and then killed. On May 5, 1990, Kissinger, because of her religious beliefs, asked the faculty to create an alternative curriculum for her to fulfill the surgical requirement. On June 27, 1990, Kissinger was told that a committee had been established to develop an alternative to Operative Practice.
 
 
 5
 On August 29, 1990, having heard nothing from the College about the alternate curriculum, Kissinger requested that the curriculum be modified to accommodate her religious beliefs. The College refused Kissinger's request. Kissinger enrolled in her third-year classes, but refused to participate in the laboratory portion of Operative Practice. On October 6, 1990, the College told Kissinger that she could withdraw from Operative Practice, which meant that she could not continue with subsequent courses and that she would be required to petition for readmission to the College.
 
 
 6
 Kissinger contends that she was ridiculed by the faculty and told not to "make waves" during the course of her efforts to be allowed to take an alternative curriculum.
 
 
 7
 Kissinger sued the College. Her lengthy complaint stated fifteen grounds for relief, including state common-law theories, state constitutional theories, and seven claims under 42 U.S.C. Sec. 1983. Kissinger claimed that the College violated her rights under the United States Constitution, including her freedom of speech, freedom of association, freedom of religion, and her rights to due process and equal protection. In addition, Kissinger claimed that the College violated her statutory right to privacy concerning her academic records under 20 U.S.C. Sec. 1232g.
 
 
 8
 On January 24, 1991, the College issued an alternative curriculum for Kissinger. Kissinger objected to parts of the alternative curriculum, but a settlement was eventually reached. Kissinger then petitioned for attorney's fees under 42 U.S.C. Sec. 1988, and the district court rejected Kissinger's petition. We affirm the district court's decision.
 
 
 9
 Under 42 U.S.C. Sec. 1988, district courts have the discretion to award attorneys' fees to a "prevailing party" in a suit arising under 42 U.S.C. Sec. 1983. Although the statute states that the award of attorneys' fees is discretionary, they should normally be granted if a plaintiff prevails. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). When a plaintiff files suit under section 1983 and reaches a settlement with the defendant, the plaintiff may be entitled to attorneys' fees as a prevailing party. Johnston v. Jago, 691 F.2d 283, 286 (6th Cir.1982). For a party to a settlement to be considered a prevailing party, the party must: (1) receive the redress as a result of having filed suit, and (2) be legally entitled to the redress. Id.
 
 
 10
 On appeal, Kissinger based her argument for attorneys' fees solely on the contention that Ohio State violated her right to exercise freely her religion. Therefore, though she alleged numerous other statutory and constitutional bases for relief in her complaint, we will address only the arguments she presents on appeal.
 
 
 11
 Ohio State's curriculum did not violate Kissinger's right to exercise freely her religion. We base this conclusion primarily on the Supreme Court's reasoning in Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Smith, even though concerned with a criminal statute, is applicable to cases involving educational requirements. Vandiver v. Hardin County Bd. of Educ., 925 F.2d 927, 932 (6th Cir.1991). In Smith, the Court upheld the State of Washington's ban on the use of peyote, a hallucinogen, despite Smith's claim that he needed peyote to exercise freely his religion. The Court reasoned that Washington's statute was generally applicable, was not aimed at particular religious practices, and did not contain a system of particularized exemptions. Smith, 494 U.S. at 877-78, 884, 110 S.Ct. at 1599-1600, 1603. We employ this three-part analysis to Kissinger's claim that Ohio State violated her right to exercise freely her religion.
 
 
 12
 Ohio State's curriculum was generally applicable. On this record, no evidence exists that any student was allowed to graduate without having taken Operative Practices and Techniques. The only exception to the College's requirement that all students pass Operative Practices and Techniques is Kissinger herself, and the College only modified its curriculum for her in the face of this lawsuit. Therefore, during the time that the College curriculum required Kissinger to take Operative Practices and Techniques, it was generally applicable to all students.
 
 
 13
 Ohio State's curriculum was not intended to prohibit any particular religious practice or belief. The record contains no evidence that Ohio State used its curriculum to attack or exclude any individual on the basis of his or her religious beliefs. To the contrary, the record indicates that the College required Operative Practices and Techniques for purely pedagogical purposes. Therefore, unlike the situation in Church of the Lukumi Babalu Aye, Inc. v. City of Hialea, --- U.S. ----, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1992) (city ordinances aimed at a religiously-motivated practice, the sacrifice of animals, violate the Free Exercise Clause), which was anticipated in Smith, 494 U.S. at 877-78, 110 S.Ct. at 1599-1600, Ohio State's curriculum was not aimed at any particular individual, group, religious practice, or religious belief.
 
 
 14
 Finally, Ohio State did not have a system of particularized exemptions that allowed students to graduate without meeting Ohio State's surgical requirements. Kissinger notes that several students were allowed to proceed with their coursework without having successfully completed Operative Practices and Techniques, and claims that these instances constitute a system of particularized exemptions. Kissinger does not, however, show one instance of a student who has been allowed to graduate without having passed Operative Practices and Techniques. Because Kissinger's purpose is to graduate from veterinary school, not merely to pursue further coursework there, the record contains no indication that Ohio State maintained a system of particularized exemptions for students who do not successfully complete Operative Practices and Techniques.
 
 
 15
 Based on the fact that Ohio State's curriculum was generally applicable to all veterinary students, was not aimed at particular religious practices, and did not contain a system of particularized exemptions, Ohio State did not violate Kissinger's right to exercise freely her religion.
 
 
 16
 Kissinger argues that Smith and Vandiver require a strict standard for evaluating her free-exercise claims because her complaint alleged that Ohio State's curriculum violates other constitutional provisions as well as the Free Exercise Clause. Kissinger bases this argument on specific language in Smith, 494 U.S. at 881, 110 S.Ct. at 1601 (citations omitted), which states,
 
 
 17
 the only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and of the press.
 
 
 18
 Kissinger also bases her claim that free-exercise analysis varies depending on whether other constitutional claims are additionally made on language in Vandiver, 925 F.2d at 933, which states, "The challenge coupled with other constitutional concerns remain subject to strict scrutiny."
 
 
 19
 We do not see how a state regulation would violate the Free Exercise Clause if it implicates other constitutional rights but would not violate the free Exercise Clause if it did not implicate other constitutional rights.[1] In the language relied upon by Kissinger, the Smith court did not explain how the standards under the Free Exercise Clause would change depending on whether other constitutional rights are implicated. In addition, although this court in Vandiver, 925 F.2d at 932-33, did discuss "hybrid" claims, we did not hold that the legal standard under the Free Exercise Clause depends on whether a free-exercise claim is coupled with other constitutional rights. Such an outcome is completely illogical; therefore, at least until the Supreme Court holds that legal standards under the Free Exercise Clause vary depending on whether other constitutional rights are implicated, we will not use a stricter legal standard than that used in Smith to evaluate generally applicable, exceptionless state regulations under the Free Exercise Clause.
 
 
 20
 As a final matter, this case is distinguishable from Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). In that case, the Court held that compulsory school-attendance laws may violate a parent's right to exercise freely his or her religion if the law impairs the parents' ability to raise their children in their faith. In this case, however, Kissinger was not compelled to attend Ohio State for her veterinary training. She matriculated there knowing that operations on live animals were part of the curriculum established by the College. She cannot now come forward and demand that the College change its curriculum to suit her desire. Courts have traditionally given public educational institutions, especially colleges and graduate schools, wide latitude to create curricula that fit schools' understandings of their educational missions. See, e.g., Doherty v. Southern College of Optometry, 862 F.2d 570, 576-66 (6th Cir.1988). We would defeat that longstanding restraint if we ruled for Kissinger today.
 
 
 21
 For these reasons, Kissinger was not legally entitled to force Ohio State to exempt her from taking Operative Practice and Techniques. Therefore, under the second prong of Johnston v. Jago, 691 F.2d at 286, Kissinger is not entitled to attorneys' fees under 42 U.S.C. Sec. 1988.
 
 
 22
 The decision of the district court is affirmed.
 
 
 
 [1]
 Our conclusion is strengthened by Justice Souter's concurrence in Church of the Lukumi Babalu Aye, --- U.S. at ---- - ----, 113 S.Ct. at 2244-45, in which he states,
 [T]he distinction Smith draws strikes me as ultimately untenable. If a hybrid claim is simply one in which another constitutional right is implicated, then the hybrid exception would probably be so vast as to swallow the Smith rule, and, indeed, the hybrid exception would cover the situation exemplified by Smith, since free speech and associational rights are certainly implicated in the peyote-smoking ritual. But if a hybrid claim is one in which a litigant would actually obtain an exemption from a formally neutral, generally applicable law under another constitutional provision, then there would have been no reason for the Court in what Smith calls the hybrid cases to have mentioned the Free Exercise Clause at all.