**F I L E D**
United States Court of Appeals
Tenth Circuit

JAN 29 1998

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ANNIE SWANSON, a minor child,
by and through her parents and next
friends, DENNIS SWANSON and
LUCY SWANSON,

     Plaintiffs-Appellants,

v.

GUTHRIE INDEPENDENT SCHOOL
DISTRICT NO. I-L; MELVIN
SCHEIHING, President; KARL
KINNEY, 1st Vice President; RICK
DAVIS, 2nd Vice President; HUGH
PLAGG, Member; EVANS G. FOWLER,
Member; ROBERT HUDSON, Member;
JANNA PIERSON, Member;
DON BOWMAN, Superintendent; J. E.
HANEY, Principal,

    Defendants-Appellees.

No. 96-6354

---

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-95-596M)

---

Douglas Laycock, University of Texas School of Law, Austin, Texas (A. Daniel Woska,
Conner L. Helms of Woska Helms Dowd Underwood & Hasbrook, Oklahoma City,
Oklahoma; Todd A. McKinnis of McAlister, McAlister & Burnett, P.C., Edmond

Oklahoma; Kelly Shakelford of The Rutherford Institute, Dallas, Texas, were on the briefs), for Plaintiffs-Appellants.

Jerry A. Richardson (Frederick J. Hegenbart with him on the brief) of Rosenstein, Fist & Ringold, Tulsa, Oklahoma, for Defendants-Appellees.

Walter A. Smith, Jr., Steven J. Routh, and Barbara J. de La Viez of Hogan & Hartson, L.L.P., Washington, D.C.; Kathryn W. Bradley of Hogan & Hartson, L.L.P., Denver, Colorado, filed an amici curiae brief.

_____

Before BRORBY and McWILLIAMS, Circuit Judges, and BLACK, District Judge.[1]

_____

BLACK, District Judge.

_____

Annie Swanson and her parents as next friends (Plaintiffs) appeal the district court's grant of summary judgment to Defendants. Annie had filed suit claiming that Defendants' refusal to allow her to attend public school on a part-time basis violated her rights under the Free Exercise Clause of the United States Constitution, her parents' constitutional right to direct her education, and her rights under Oklahoma state law.[2] We affirm the judgment of the district court.

_____

[1] The Honorable Bruce D. Black, United States District Judge for the District of New Mexico, sitting by designation.

[2] Annie had also claimed that Defendants' actions violated the Religious Freedom Restoration Act. However, as she acknowledged at oral argument, the Supreme Court has declared that statute unconstitutional. City of Boerne v. Flores, 117 S.Ct. 2157 (1997).

**FACTS**

Annie has been home-schooled by her parents since she started school. The purpose behind the home-schooling is religious–Annie's parents wish to be able to teach her Christian principles that are excluded from the public-school curriculum. When Annie reached the seventh grade, her parents decided that she would benefit by taking a few classes at the public school. Annie's parents believed the public school's ability to teach certain classes (particularly foreign-language classes, vocal music, and some science classes) was superior to their instructional capability in those areas, and that attending some classes at the public school would better prepare Annie for college.

Annie's parents spoke to the then-superintendent of schools and received permission for her to attend two seventh-grade classes for the last nine weeks of the school year. She attended those classes, performed very well in them, and caused no disruption to the school system. Annie then pre-registered for two classes for the eighth grade. Before she began school, however, Defendant Bowman was hired as the new superintendent. He refused to allow Annie to attend the eighth grade on a part-time basis, and told her parents they would need permission from the school board. He also made some statements that Mrs. Swanson interpreted as criticism of Christian home-schoolers.

In August 1994 the school board held a regularly-scheduled meeting at which the Swansons were allowed to present their position. The board deferred a decision on adopting a policy concerning part-time attendance, but did vote to require Annie to

3

register as a full-time student if she wished to attend eighth-grade classes before such a policy could be adopted. At the September meeting of the school board the board voted to adopt the following part-time-attendance policy:

> "It is the policy of the Guthrie Board of Education that all students enrolling in Guthrie Public Schools must do so on a full-time basis. Full-time basis shall be defined as attending classes for the full instructional day within the public school system or in conjunction with another state accredited institution such as vocational-technical school or a college or university for concurrent enrollment. The only exceptions to this policy shall be for fifth-year seniors and special education students whose IEP's require variations of student schedules."

Following this meeting, attorneys representing Annie and her parents wrote to the school board threatening a lawsuit and requesting an opportunity to address the board. A special meeting of the board was held in October 1994, at which the board reiterated its previously-adopted policy. The board also added the following sentence to the policy: "In the event the State Department of Education advises us that part-time students can be counted for state aid purposes, the Board will reconsider this policy." The board's president also made a public statement concerning the issue, noting the board's respect for the right of parents to home-school their children, and indicating that the basis for the board's decision was simply the fact that part-time students cannot be counted for state financial-aid purposes. The board feared that Annie's request, if granted, could set a precedent allowing other home-schooled children as well as private-school students to use the public school's facilities on an as-wanted basis, without a corresponding increase in

4

state financial aid. Pursuant to the board's policy, Annie was not allowed to take classes of her choice from the public school during the 1994-95 school year, or to otherwise attend the public school on a part-time basis.

In April 1995, Plaintiffs filed the instant lawsuit, alleging various constitutional violations and a state-law claim. Following a motion to dismiss by Defendants, a motion for summary judgment by Plaintiffs, and a hearing on Plaintiffs' motion for a preliminary injunction, the district court granted summary judgment for Defendants.

**STANDARD OF REVIEW**

Plaintiffs do not claim there are any material facts in dispute. Instead, they maintain that the trial court should have granted their own motion for summary judgment as a matter of law. "We review the grant of summary judgment de novo, applying the same standard applicable in the district court." Meyerhoff v. Michelin Tire Corp., 70 F.3d 1175, 1178 (10th Cir. 1995). When there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Id. Accepting the facts of this case as presented, therefore, we must decide whether Annie or her parents have shown that they, rather than Defendants, were entitled to summary judgment on one or more of their claims.

**ANALYSIS**

**Free-Exercise Claim**

The question at issue in this case is the validity of the rule or regulation enacted by the school board, as it impacts on Plaintiffs' right to the free exercise of their religion. Plaintiffs maintain that the part-time-attendance policy is a burden, albeit indirect, on the full and free exercise of their religious beliefs concerning the way in which children should be raised and educated. Therefore, they argue, the policy should be subjected to a type of strict scrutiny, requiring that it be justified by a compelling governmental interest and that it be narrowly tailored to meet that interest. See Sherbert v. Verner, 374 U.S. 398, 402-03 (1963) (applying this test to a denial of unemployment compensation benefits that was based on the government's refusal to recognize religious beliefs as a valid reason for terminating one's employment). Defendants, on the other hand, contend that the policy is a neutral policy of general applicability that need not satisfy the compelling-governmental-interest requirement. In the alternative, they claim there were compelling governmental interests at stake in the adoption of the part-time-attendance policy.

As a general proposition, a law (or policy) that is neutral and of general applicability need not be justified by a compelling governmental interest even if that law incidentally burdens a particular religious practice or belief. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993); U.S. v. Meyers, 95 F.3d 1475, 1481 (10th Cir. 1996), cert. denied, ___ S.Ct. ___, 1997 WL 696625 (1997). On its

6

face, the policy enacted by the school board in this case is neutral and of general application–it applies to all persons who might wish to attend public school on a part-time basis, and prohibits such part-time attendance (with certain specific exceptions, such as fifth-year seniors and special-education students). It applies to students who are home-schooled for secular reasons as well as those home-schooled for religious reasons, and it applies to students attending private schools whether or not those private schools are religious or secular in orientation.

In their briefs on appeal, Plaintiffs have argued that the policy is not actually neutral and instead was aimed specifically at Annie, for purposes of discriminating against Christian home-schoolers. If that were the case, the general proposition discussed in Lukumi Babalu Aye would not apply and Defendants would have to justify the policy with a compelling governmental interest and a showing that the policy was narrowly tailored to further that interest. Lukumi Babalu Aye, 508 U.S. at 531-32. However, as Defendants point out, Plaintiffs never made this argument below. That is, Plaintiffs did not attempt to show that the seemingly neutral policy was in fact created for a discriminatory purpose, or that the exceptions to the policy were so pervasive that the policy actually applied only to Christian home-schoolers. Cf. id., 508 U.S. at 534-42 (although city's ordinance appeared neutral on its face, circumstances surrounding its enactment, statements of city councilors, and fact that exceptions to ordinance meant burden of ordinance fell only on particular religious practice established that ordinance

was not in fact neutral but was aimed at suppressing that practice). Since the argument now advanced by Plaintiffs was not made below or ruled on by the district court, we will not address it for the first time on appeal. See Tele-Communications, Inc. v. Commissioner of Internal Revenue, 104 F.3d 1229, 1232-33 (10th Cir. 1997) (generally, appellate court will not consider issue raised for first time on appeal; vague, arguable references to a point in the district court proceedings do not preserve the issue for appeal).[3]

We are therefore left with the fact that the board's policy is a neutral policy of general applicability. Plaintiffs do not attempt to argue that the policy directly burdens their right to free expression, nor could they. The policy does not prohibit them from home-schooling Annie in accordance with their religious beliefs, and does not force them

---

[3]We note that Plaintiffs do not appear to have made a sufficient evidentiary showing below to raise an issue of fact concerning the neutrality of the part-time-attendance policy. It is undisputed that the only exceptions to the policy constitute categories of students that are counted for state-aid purposes; that is, if the state counts a part-time student, such as a student enrolled in a vocational-technical program as well as the high school, as a full-time student for purposes of doling out educational funds, the policy grants an exception to the full-time-attendance requirement. This is not discrimination on the basis of religion, but on the basis of funding. In addition, it is undisputed that no school board member made any derogatory comments about Christian home-schoolers or home-schoolers of any kind, unlike the city councilors in Lukumi Babalu Aye. Finally, the fact that Annie is the only student who has to this point requested the privilege of attending public school part-time does not mean that the policy was aimed solely at her. The school board expressly discussed the fact that the problem was the precedent that would be set, not that Annie's attendance alone would cause difficulties. Perhaps because the neutrality issue was not raised below, Plaintiffs failed to make any evidentiary showing that the adoption of the policy was motivated by a discriminatory motive of any kind.

8

to do anything that is contrary to those beliefs. Cf. Employment Div., Oregon Dep't of Human Services v. Smith, 494 U.S. 872, 877-78 (1989) (government may not regulate religious beliefs as such, nor compel affirmation of certain beliefs, nor punish the expression of religious doctrines, nor impose special disabilities on the basis of religious views or religious status, but may enact laws that incidentally burden religious expression). The board's policy therefore does not violate traditional free-exercise principles. See Thiry v. Carlson, 78 F.3d 1491, 1496 (10th Cir.) (law that is religion-neutral and generally applicable does not violate Free Exercise Clause even if it incidentally affects religious practice), cert. denied, 117 S.Ct. 78 (1996).

**Hybrid-Rights Claim**

Plaintiffs point out that parents have a constitutional right to raise and educate their children, and that the part-time-attendance policy infringes on this right as well as on the free-exercise right discussed above. Therefore, according to Plaintiffs, the compelling-interest/closely-tailored analysis must be applied to determine the validity of the policy. Plaintiffs' argument is based on a portion of the Smith case, in which the Supreme Court noted the difference between cases solely involving the Free Exercise Clause and those implicating other constitutional protections, such as the parental right to direct the education of children. 494 U.S. at 881. The Court also quoted a passage from Wisconsin v. Yoder, 406 U.S. 205, 233 (1972), which states the proposition that when the interests of parenthood are combined with a free exercise claim "of the nature revealed by this

9

record," the government must establish more than a mere reasonable relationship between its law and a purpose within the competency of the State. Id. at fn. 1. This more-than-a-reasonable-relationship requirement, it could be argued, is similar to the compelling-interest test set out in Sherbert.[4]

It is difficult to delineate the exact contours of the hybrid-rights theory discussed in Smith. As we discuss below, however, we believe that simply raising such a claim is not a talisman that automatically leads to the application of the compelling-interest test. We must examine the claimed infringements on the party's claimed rights to determine whether either the claimed rights or the claimed infringements are genuine. We will begin with Plaintiffs' parental-rights claim.

We have no quarrel with Plaintiffs' assertion that Annie's parents have a constitutional right to direct her education, up to a point. For example, they have a right to send her to a private school, whether that school is religious or secular. See Pierce v. Society of Sisters, 268 U.S. 510 (1925). Numerous cases, however, have made it clear that this constitutional right is limited in scope. Federal courts addressing the issue have held that parents have no right to exempt their children from certain reading programs the parents found objectionable, or from a school's community-service requirement, or from

---

[4]But see Kissinger v. Board of Trustees, 5 F.3d 177, 180 (6th Cir. 1993), in which the Sixth Circuit held that the legal standard applicable to a constitutional claim would not change simply because constitutional principles other than the Free Exercise Clause had been implicated.

an assembly program that included sexually explicit topics. Immediato v. Rye Neck School Dist., 73 F.3d 454 (2d Cir.), cert. denied, 117 S.Ct. 60 (1996); Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525 (1st Cir. 1995), cert. denied, 116 S.Ct. 1044 (1996); Fleischfresser v. Directors of School Dist. 200, 15 F.3d 680 (7th Cir. 1994); Mozert v. Hawkins County Bd. of Educ., 827 F.2d 1058 (6th Cir. 1987), cert. denied, 484 U.S. 1066 (1988). Other courts have determined that home-schooled children may be subjected to standardized testing to assess the quality of education the children are receiving, even over the parents' objections. Murphy v. State of Arkansas, 852 F.2d 1039 (8th Cir. 1988). In addition, states may constitutionally require that teachers at religiously-oriented private schools be certified by the state. Fellowship Baptist Church v. Benton, 815 F.2d 485 (8th Cir. 1987). The case law in this area establishes that parents simply do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject. See, e.g., Murphy, 852 F.2d at 1043; see also State v. DeLaBruere, 577 A.2d 254, 274 (Vt. 1990) (reasonable state regulations do not infringe on right to home school); In re Charles, 504 N.E.2d 592, 599-600 (Mass. 1987) (same).

The claimed constitutional right Plaintiffs wish to establish in this case is the right of parents to send their children to public school on a part-time basis, and to pick and choose which courses their children will take from the public school. Plaintiffs would have this right override the local school board's explicit decision to disallow such part-

11

time attendance (except where the school would receive state funding for the part-time attendee). However, decisions as to how to allocate scarce resources, as well as what curriculum to offer or require, are uniquely committed to the discretion of local school authorities, as the cases cited above demonstrate.

Plaintiffs maintain that they do not wish to alter the curriculum offered by Defendants, and that they are therefore in a different position than the parents in other cases who wanted to exempt their children from certain classes or requirements. We do not accept this distinction. Plaintiffs do wish to exempt Annie from certain classes–they simply wish to exempt her from more classes than did the parents in, for example, the Mozert case. We see no difference of constitutional dimension between picking and choosing one class your child will not attend, and picking and choosing three, four, or five classes your child will not attend. The right to direct one's child's education does not protect either alternative.

The above discussion establishes that Plaintiffs have shown no colorable claim of infringement on the constitutional right to direct a child's education. Accordingly, we hold that this is not a hybrid-rights case. See Brown, 68 F.3d at 539 (plaintiffs had not stated a privacy or substantive-due-process claim, so the Smith hybrid exception did not apply). We note that this case illustrates the difficulty of applying the Smith exception. See Kissinger, 5 F.3d at 180, fn. 1 (quoting Justice Souter's concurrence in the Lukumi Babalu Aye case, which points out the danger that the Smith exception will swallow the

12

Smith rule).  At a minimum, however, as we stated above, it cannot be true that a plaintiff can simply invoke the parental rights doctrine, combine it with a claimed free-exercise right, and thereby force the government to demonstrate the presence of a compelling state interest.  Whatever the Smith hybrid-rights theory may ultimately mean, we believe that it at least requires a colorable showing of infringement of recognized and specific constitutional rights, rather than the mere invocation of a general right such as the right to control the education of one's child.  Cf. Yoder, 406 U.S. at 233 (stating that heightened scrutiny applies when one right is combined with a free exercise claim of the nature revealed by this record, indicating that it is not sufficient simply to invoke the Free Exercise Clause as well as another general constitutional claim to trigger the compelling-interest/narrowly-tailored-rule analysis for which Plaintiffs argue).  Based on the foregoing, we hold that Defendants were not required to show a compelling state interest in this case, despite Plaintiffs' attempt to invoke the hybrid-rights doctrine.[5]

---

[5]The Smith opinion does not make it clear whether it is constitutionally sufficient for a law or policy to be neutral and of general applicability, or whether the law or policy will still have to satisfy some lesser standard than the compelling-interest test.  See Bowen v. Roy, 476 U.S. 693, 707-08 (1986) (where there is no intent to discriminate against a particular religion, the government's burden will be met if the condition required is a reasonable means of promoting a legitimate public interest).  Plaintiffs have not argued that the part-time-attendance policy does not satisfy such a reasonable-relationship test, as opposed to the more stringent compelling-interest analysis.  Assuming that the reasonable-means test applies in this case, however, it is clear that the policy is a reasonable means of promoting a legitimate governmental interest.  The policy is designed to ensure that any student attending the public school on a part-time basis provides a concomitant source of state financial aid, because he or she is recognized by the state department of education as a countable unit for purposes of determining

13

**Claim to Benefit Conferred by State**

Relying on a series of Supreme Court cases decided in the unemployment context (see, e.g., Sherbert v. Verner; Thomas v. Review Bd, Indiana Employment Security Div., 450 U.S. 707 (1981)), Plaintiffs make the following argument: (1) they have been denied a benefit that has been conferred on other students who are allowed to attend public school part-time; (2) they have been denied that benefit because their religious beliefs require that Annie be educated at home part-time; and (3) therefore, an exception must be made to accommodate their beliefs and allow Annie to attend part-time. Sherbert and its progeny may stand for the proposition that where a system of individualized or particularized exceptions has been set in place, a religious reason for qualifying for such an exception must be given as much weight as a non-religious reason. See Smith, 494 U.S. at 884; Kissinger, 5 F.3d at 179-80.[6]

---

attendance at the public school. While Plaintiffs hold a dim view of the wisdom of the policy, it can certainly not be denied that attempting to maximize the state funding available on a per-student basis is a legitimate interest of Defendants, and that limiting part-time attendance to those categories of students recognized by the policy is a reasonable means of accomplishing that goal. See Lisa M. Lukasik, Comment, The Latest Home Education Challenge: The Relationship Between Home Schools and Public Schools, 74 N.C.L.R. 1913, 1967-69 (1996), for a discussion of other legitimate reasons a school board might have for restricting part-time enrollment.

[6]In the unemployment context, the system of individualized exceptions that has been created consists of the "good cause" standard. That is, a worker is eligible for unemployment benefits if he or she leaves her employment for good cause, but not if he or she simply resigns. Smith. Under the Sherbert line of cases, a person who resigns from employment due to strongly-held religious beliefs (e.g., a Seventh-Day Adventist who could not work on the Sabbath, or a Quaker who could not in good conscience work on weapons of war) has established good cause for resigning to the same extent as a

14

There is some doubt concerning the continued validity of the <u>Sherbert</u> analysis outside the unemployment context. <u>Smith</u>, 494 U.S. at 883 (noting that in recent years, the Supreme Court has abstained from applying the <u>Sherbert</u> test outside the unemployment-compensation field). Even if the analysis remains applicable to a case such as this one, however, it does not aid Plaintiffs' position. The school board's policy in this case does not establish a system of <u>individualized</u> exceptions that give rise to the application of a subjective test. Instead, the only recognized exceptions to the full-time-attendance requirement are strict categories of students, all of whom have one characteristic in common--the state of Oklahoma recognizes them as students for purposes of calculating the amount of financial aid to provide to the school district. Plaintiffs, and all other home-schoolers (religious or secular) who do not meet that requirement, are ineligible for the exception. As we discussed above, there is no evidence that the exception is in any way based on religious categorization or discrimination. In the absence of a system of individualized exceptions to the no-part-time-attendance policy, there is no room for a <u>Sherbert</u>-type argument that Plaintiffs' religious reasons for wanting Annie to attend public school only part-time must be given credence.

Plaintiffs also attempt to extend the <u>Sherbert</u> analysis beyond the individualized-exceptions rule recognized (although not adopted) in <u>Smith</u>. They maintain that part-time

_____

person who resigns due to poor health, or lack of transportation to the job site, or any other secular reason that might prevent a person from continuing to work at a particular job.

15

attendance is a benefit conferred by the government, and that they may not be disqualified from receiving that benefit if they have a religious motivation for taking certain actions (here, refusing to send Annie to public school full time) that would otherwise disqualify them from receiving the benefit. Put simply, Plaintiffs argue (as they explicitly acknowledged at oral argument) that if anyone is allowed to attend the public school part-time, Annie must be allowed to do so also, because her motivation for wanting to do so is religious. According to Plaintiffs' argument, if a governmental entity offers a benefit such as part-time attendance under limited qualifying conditions, and a claimant's religious beliefs or practices prevent him or her from meeting those conditions, the benefit must be awarded to the claimant despite the failure to meet the conditions.

The difficulty we have with this argument is that it would elevate Plaintiffs to a higher status than other home-schoolers who educate their children at home (or, for that matter, in a private school) for secular rather than religious reasons. That is, the part-time attendance policy, which at present precludes Annie and all other home-schooled or private-schooled children from taking a few selected classes from the public school, would be rendered inapplicable to religious home-schooling families but not to secular home-schooling or private-schooling families. The Free Exercise Clause does not extend so far. It is designed to prevent the government from impermissibly burdening an individual's free exercise of religion, not to allow an individual to exact special treatment from the government. See Snyder v. Murray City Corp., 124 F.3d 1349, 1353 (10th Cir.

16

1997) (quoting Justice Douglas' concurring opinion in <u>Sherbert</u>: the Free Exercise Clause "is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government."). Despite Plaintiffs' arguments to the contrary, what they seek in this case is special treatment not accorded other home-schooled or private-schooled students. They seek an added exception to the part-time attendance policy, that would accommodate people who home-school for religious reasons. Nothing in the Free Exercise Clause requires that such special treatment be provided.[7] <u>See</u> <u>Bowen</u>, 476 U.S. at 703-07 (discussing fact that no violation of right to free exercise of religion occurs when government conditions award of benefits on conduct that might be prohibited by some religions).

**Parental Right to Direct Education**

---

[7]In fact, there is a real possibility that creating an exception for religious purposes but not for secular purposes would run afoul of the Establishment Clause, which complements the Free Exercise Clause by prohibiting discrimination in favor of, rather than against, a certain religion or religions. <u>See, e.g.</u>, <u>Board of Educ. of Kiryas Joel Village School Dist. v. Grumet</u>, 512 U.S. 687, 696, 706 (1994) (proper respect for both Free Exercise Clause and Establishment Clause requires neutrality toward religion, favoring neither one religion over others nor religious adherents over nonadherents; statute that singled out a particular religious sect for special treatment in school context violated First Amendment); <u>Parents' Ass'n of P.S. 16 v. Quinones</u>, 803 F.2d 1235, 1242 (2d Cir. 1986) (violation of Establishment Clause if students at a private Jewish school allowed to attend remedial classes at public school); <u>Americans United for Separation of Church and State v. Porter</u>, 485 F.Supp. 432, 444 (W.D. Mich. 1980) (after examining all facets of dual enrollment program between public and parochial schools, court concluded program violated Establishment Clause).

In addition to arguing the parental-rights issue as a component of the hybrid-rights claim, Plaintiffs maintain that the part-time-attendance policy violates the right to control Annie's education, separate and apart from the claimed free-exercise violation. For the reasons stated in the hybrid-rights discussion, however, we hold that the parental right to control a child's education does not extend as far as Plaintiffs would wish. There is no federal parental right that would force a local school board to allow parents to dictate that their children will attend public school for only part of the school day.

**Possible State-Law Claims Not Addressed**

Plaintiffs contend that Defendants should be estopped from applying the part-time-attendance policy to Annie, because she was allowed to attend the public school on a part-time basis for a portion of one semester during her seventh-grade year. This argument was not raised below or ruled on by the district court. Therefore, we will not address it on appeal. See Tele-Communications, Inc., supra, 104 F.3d at 1232-33.

The parties' briefs on appeal contain some references to the Oklahoma Constitution and to Oklahoma statutes. In the proceedings held below, the question of Oklahoma law appears to have been raised in two contexts. First, Plaintiffs' complaint claimed a violation of the Oklahoma Governmental Tort Claims Act (GTCA). The district court ruled that this claim had been confessed during the briefing process, and Plaintiffs have not appealed that ruling. We therefore do not discuss the issue.

18

Second, Oklahoma law was argued in the parties' briefs below in connection with a federal due-process argument. (App. 28-36, 107-08). Plaintiffs maintained they had a property interest in a free public education, under Oklahoma law, and had been deprived of that interest without due process. The district court ruled that Plaintiffs had no property interest in a part-time free public education and dismissed the due-process claim. Plaintiffs have not argued the due-process issue in their briefs on appeal, and so have abandoned it. Cf. Reazin v. Blue Cross and Blue Shield of Kansas, 899 F.2d 951, 979, fn. 43 (10th Cir.) (issue listed in docketing statement but not briefed is considered abandoned), cert. denied, 497 U.S. 1005 (1990).

Plaintiffs now, in their briefs on appeal, point to the Oklahoma Constitution in support of their parental-rights claim rather than a due-process claim. They state that a parent's right to direct a child's education is even broader under Oklahoma law than under federal law. Plaintiffs do not explain, however, how the Oklahoma Constitution or Oklahoma statutes have any application to federal law, apart from the due-process claim that has been abandoned. They have never clearly argued an independent state-law basis for applying Oklahoma law, other than the GTCA claim abandoned below. Given the confused state of the pleadings concerning the position of Oklahoma law in this litigation, as well as the fact that all federal claims are being disposed of in this opinion, we will not address any potential claim involving Oklahoma law. Cf. Snyder, supra, 124 F.3d at 1354 (refusing to address state constitutional claim where state law on the subject was unclear

19

and all federal claims were resolved in this Court's opinion).  We express no opinion as to any preclusive effect that might result from the district court's holdings in this case and Plaintiffs' failure to clearly brief the possible state-law issues.

**CONCLUSION**

Plaintiffs have attempted to portray this case as one involving religious discrimination against Christian home-schoolers.  The record provided to the district court and this court, however, indicates that it involves only financial distinctions between certain part-time students and all home-schoolers, secular or religious, as well as private-school students.  Since this case involved only a neutral rule of general applicability, it was sufficient for Defendants to prove a reasonable relationship between the part-time-attendance policy and a legitimate purpose of the school board.  Plaintiffs have not argued that Defendants failed to meet this low threshold, and it is clear that Defendants have satisfied it.  Therefore, the district court's decision dismissing all of Plaintiffs' claims is AFFIRMED.