Richard M. CORNWELL and Mary Doris Cornwell, Individually and as parents of David Douglas Cornwell and John Grant Cornwell, Minors, and Dr. Robert L. Kondner and Thelma L. Kondner, Individually and as parents of Marilyn A. Kondner and David W. Kondner, Minors, and Edward M. Lowe and Matilda K. Lowe, Individually and as parents of William Edward Lowe, a Minor, Plaintiffs,

v.

STATE BOARD OF EDUCATION et al., Defendants.

Civ. No. 20822.

United States District Court, D. Maryland.

Aug. 22, 1969.

Edward C. Mackie and Warren K. Rich, Baltimore, Md., for plaintiffs.

R. Bruce Alderman, County Solicitor, and Harris James George and Thomas J. Aversa, Jr., Asst. County Solicitors, Towson, Md., for defendant Baltimore County Board of Education.

Francis B. Burch, Atty. Gen. of Maryland, and Martin B. Greenfeld, Asst. Atty. Gen., Baltimore, Md., for defendant State Board of Education.

## MEMORANDUM OPINION

HARVEY, District Judge:

In this civil action, Baltimore County taxpayers are suing the Maryland State Board of Education seeking to prevent the implementation in the Baltimore County Schools of a program of sex education. In particular, the plaintiffs, who are school children and their parents, seek to have this Court declare unconstitutional a bylaw duly adopted by the State Board. The provision in question is By-Law 720, Section 3, Subsection 4, which provides as follows:

"It is the responsibility of the local school system to provide a comprehensive program of family life and sex education in every elementary and secondary school for all students as an integral part of the curriculum includ-ing a planned and sequential program of health education."

The plaintiffs ask for the following relief (paragraph 14 of the complaint):

"Wherefore, plaintiffs demand judgment that the defendants * * * be perpetually and permanently enjoined and restrained from promulgating, teaching, initiating or enforcing any of the tenets found within Sub-section 4 of By-Law 720:3 as they pertain to non-pregnant children, as such By-Law was enacted in July, 1967; and plaintiffs further pray for a preliminary injunction * * * and * * * other * * * relief."

The plaintiffs claim that jurisdiction exists here because the by-law in question violates the First Amendment, the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fourteenth Amendment. Defendants have filed motions to dismiss the complaint.

██ At the outset, it should be noted that the plaintiffs have not requested in this complaint the convening of a three-judge court. However, it would appear that this is a proper case for such a court. See 28 U.S.C. Section 2281; also American Federation of Labor v. Watson, 327 U.S. 582, 592, 66 S.Ct. 761, 90 L.Ed. 873 (1946), quoting from Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). But, the mere fact that plaintiffs have not requested a three-judge court does not mean that the action is subject to summary dismissal. In this connection, see Aaron v. Cooper, 261 F.2d 97, 105 (8th Cir. 1958). Therefore, this action will be treated as one in which a three-judge court was requested but with respect to which the suit has been referred to one judge to make the initial determination whether the suit is subject to dismissal.

██ It is clear that one judge may dismiss if he finds that a constitutional claim is so insubstantial that there is no jurisdiction. As the Supreme Court noted in Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933), for

jurisdiction to exist in a three-judge court case there must be a substantial question of constitutionality. The Court further said the following (at page 32, 54 S.Ct. at page 4):

"The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject   *   *   *'."

See also the Fourth Circuit decision of Jacobs v. Tawes, 250 F.2d 611 (4th Cir. 1957); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and a recent decision of Judge Kaufman in this Court, Chester v. Kinnamon, 276 F.Supp. 717 (D.Md.1967). Judge Kaufman, at page 720, said this:

"Under 28 U.S.C. §§ 2281 and 2284 (1) this Court is required to ask the Chief Judge of the United States Circuit Court for the Fourth Circuit to convene a three-judge District Court *only* if there is a substantial, non-frivolous attack upon the constitutionality of a Maryland statute, but not otherwise." (Emphasis in original)

■ In determining whether there is here a substantial question of constitutionality, this Court concludes initially that no question whatsoever arises under the Fourteenth Amendment. There is first no denial of substantive due process to the plaintiffs. Under Section 6 of Article 77 of the Maryland Code (as amended and re-codified by Chapter 405 of the Acts of 1969), the State Board is directed to determine the educational policies of the state and to enact bylaws for the administration of the public school system, which when enacted and published shall have the force of law. Assuredly it cannot be said that the bylaw here is an arbitrary or unreasonable exercise of the authority vested in the State Board to determine a teaching curriculum, nor that there is no basis in fact for the legislative policy expressed in the bylaw. Furthermore, it does not appear that the bylaw denies equal protection of the laws, as on its face it applies to all pupils equally.

■ Plaintiffs allege that the enactment of this bylaw was based on a study made in reference to pregnant pupils. But whatever the genesis of the bylaw, it is not the study that is being attacked here but the bylaw itself, and it is being attacked on its face. It is the provisions of the bylaw then that must be examined in the light of the United States Constitution. The plaintiffs' argument that the bylaw is defective because it applies to non-pregnant as well as to pregnant pupils is difficult to follow. There would appear to be just as much reason for the State Board to provide sex education for the non-pregnant (and, incidentally, for the non-impregnating) as for those students who, because of a lack of information on the subject (or for other reasons), have become pregnant or who have caused pregnancy.

■ The plaintiffs further assert that they have the exclusive constitutional right to teach their children about sexual matters in their own homes, and that such exclusive right would prohibit the teaching of sex in the schools. No authority is cited in support of this novel proposition, and this Court knows of no such constitutional right. This Court, then, is satisfied that the claims asserted in this complaint under the Fourteenth Amendment are so insubstantial that they do not confer jurisdiction here.

In support of their First Amendment claim, the plaintiffs assert that they have been denied the free exercise of their religious concepts and that the teaching of sex in the Baltimore County Schools will in fact establish religious concepts. In Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), the Supreme Court said that the Establishment Clause meant the following (at page 15, 67 S.Ct. at page 511):

"Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion,

aid all religions, or prefer one religion over another."

In the more recent case of School District of Abington Township v. Schempp, 374 U.S. 203, 225, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963), the Supreme Court said that the actual study of the Bible and of religion, "when presented objectively as part of a secular program of education" would not offend the Establishment Clause. Earlier in that opinion, at page 222, 83 S.Ct. at page 1571, the Court formulated a basic test for determining the validity of a legislative provision under the Establishment Clause of the First Amendment as follows:

"[W]hat are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution."

It is clear from the cases that the First Amendment does not say that in every and all respects there shall be a separation of church and state. See Zorach v. Clauson, 343 U.S. 306, 312, 72 S.Ct. 679, 96 L.Ed. 954 (1952). As Mr. Justice Brennan said, concurring in the Schempp case, the Framers meant only to foreclose "those involvements of religious with secular institutions which (a) serve the essentially religious activities of religious institutions; (b) employ the organs of government for essentially religious purposes; or (c) use essentially religious means to serve governmental ends, where secular means would suffice." 374 U.S. at 295, 83 S.Ct. at 1609.

Here it is helpful to look at those cases in which the Supreme Court has found an establishment of religion in violation of the First Amendment. I would note Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), where official prayers to be recited in the classroom were held unconstitutional. I would further note Chamberlin v. Dade County Board of Public Instruction, 377 U.S. 402, 84 S.Ct. 1272, 12 L.Ed.2d 407 (1964), and the Schempp case to which I have previously referred, where devotional Bible reading and recitation of the Lord's Prayer were held to be in violation of the First Amendment. I would note People of State of Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), where the employment of teachers by private religious groups to give religious instruction in the schools to those children whose parents desired it was held to be proscribed.

On the other hand, where such overt religious activities have been absent, the Supreme Court has upheld governmental programs even though they had some religious connection. Here I would refer to the Everson case, supra, where the reimbursement of parents for transportation expenses to parochial schools was upheld, Zorach v. Clauson, supra, where a released-time program allowing students to attend religious instruction centers off school grounds during the school day was upheld, and Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), where the loan by the state of textbooks to students in parochial schools was also upheld.

A very recent and pertinent decision of the Supreme Court is Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). There the Arkansas anti-evolution statute was under challenge. That act made it a criminal offense to teach the theory that man evolved from a lower form of animal life. The Supreme Court found the act to be an unconstitutional violation of the Establishment and Free Exercise Clauses and held that a state may not proscribe the teaching of a particular segment of knowledge solely because it conflicts with a particular doctrine of a particular religious group. In that case, the Court said this (at page 104, 89 S.Ct. at page 270):

"Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint * * *. By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot

intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values."

The Court further asserted in that case that the state may neither prefer any religion nor prohibit any theory just because it be deemed antagonistic to the principles or prohibitions of any religious sect or dogma. The Court quoted in the *Epperson* case from Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 505, 72 S.Ct. 777, 782, 96 L.Ed. 1098 (1952), as follows:

> "[T]he state has no legitimate interest in protecting any or all religions from views distasteful to them * *."

Rather, the test is that enumerated in the *Schempp* case, which I have previously cited, namely, what are the purpose and the primary effect of the enactment. And I would interpolate in the quotation from the *Burstyn* case to say that this Court likewise has no legitimate interest in protecting any or all religions from views distasteful to them.

 Applying these principles that have been established by these various cases, it is quite clear to this Court that the purpose and primary effect of the bylaw here is not to establish any particular religious dogma or precept, and that the bylaw does not directly or substantially involve the state in religious exercises or in the favoring of religion or any particular religion. The bylaw may be considered quite simply as a public health measure. As the Supreme Court indicated in Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), the State's interest in the health of its children outweighs claims based upon religious freedom and the right of parental control. The Court in that particular case said this (at pages 168–169, 64 S.Ct. at page 443):

> "A democratic society rests * * * upon the healthy, well-rounded growth of young people into full maturity as citizens * * *. It is too late now to doubt that legislation appropriately

designed to reach such evils is within the . state's police power, whether against the parent's claim to control of the child or one that religious scruples dictate contrary action."

In summary, then, the Court concludes that the federal question here is plainly insubstantial. Construing the allegations in a light most favorable to the plaintiffs, as the Court must do on these motions to dismiss, this Court finds that the constitutional questions relied upon are obviously without merit. The unsoundness and insubstantiality of the plaintiffs' position is clearly indicated by the various decisions of the Supreme Court to which I have alluded.

For these reasons then, the two motions to dismiss are granted.