**Turk LEEBAERT, in his own right and on Behalf of his minor son, Corky LEEBAERT, Plaintiffs,**

v.

**Carol A. HARRINGTON, in her personal and official capacity as Superintendent of Schools, Fairfield Board of Education, and Town of Fairfield, Defendants.**

**No. 3:99–CV–2046 (RNC).**

United States District Court, D. Connecticut.

March 30, 2002.

492

Vincent P. McCarthy, McCarthy Law Offices, New Milford, CT, US Court of Appeals, Office of the Clerk, New York City, for Plaintiffs.

Steven A. Levy, Noel R. Newman, Friedman, Newman, Levy, Sheehan & Carolan, Fairfield, CT, Michael J. Rose, Howd & Ludorf, Hartford, CT, for Defendants.

## RULING AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

CHATIGNY, District Judge.

Plaintiff Turk Leebaert brings this action pursuant to 42 U.S.C. § 1983 against the Superintendent of Schools in Fairfield, Connecticut, the Fairfield Board of Education, and the Town of Fairfield claiming that they have violated the First and Fourteenth Amendments of the United States Constitution by refusing to excuse his minor son Corky from a mandatory health education course and by giving his son an "F" in the course after he failed to attend.[1] Plaintiff also alleges that defendants have violated Conn.Gen.Stat. § 10–16e, which provides that no student shall be required to participate in a family life education program, and Conn.Gen.Stat § 52–571b, which prohibits the State from burdening a person's exercise of religion.[2] Plaintiff's complaint seeks an order directing defendants to remove the "F" from his son's school transcript, an injunction prohibiting them from failing students who have exercised their right under § 10–16e to opt out of any family life course, an order requiring defendants to "further clarify and separate Health and Family Life and their respective curricula," and an award of attorney's fees and costs.

The parties have filed cross-motions for summary judgment. They agree that plaintiff's federal constitutional claims can and should be decided on the basis of their written submissions without an evidentiary hearing. Though the relief sought in the complaint is quite broad—extending to the rights of all students to opt out of other courses and the right of all parents to require defendants to clarify the line between, and separate, the health curriculum from the family life curriculum—the issue briefed by the parties is limited to whether the First and Fourteenth Amendments required defendants to honor plaintiff's request to exempt his son from the mandatory parts of the seventh grade health course as alleged in plaintiff's first and second claims for relief. Plaintiff contends that he is entitled to summary judgment because defendants have not shown that their refusal to grant the exemption was justified by a compelling state interest. Defendants respond that they are entitled to summary judgment because plaintiff has not shown that requiring his son to attend the course imposed a significant burden on his free exercise or parental rights and requiring his son to take the course reasonably served legitimate educational objectives.[3]

After careful consideration, I agree with defendants that they were not required to

---

1. Though both Mr. Leebaert and his son are identified as plaintiffs in the complaint, the parties' briefs focus solely on Mr. Leebaert's free exercise and parental rights. Accordingly, for ease of reference, I will use the term "plaintiff" to refer to Mr. Leebaert only and will refer to his son as Corky.

2. Plaintiff incorporates into the fourth count of the complaint a claim that defendants have also violated article I, section 3 of the Connecticut Constitution. See doc. 1 at ¶ 25. However, he does not refer to the claim in his papers, and the claim is therefore deemed abandoned.

3. If the parties intended to obtain a judicial resolution of any other issue in this forum—in particular the rights of parents to exempt their children from other courses and to require defendants to clarify and modify the curriculum—they have not given me an adequate basis for adjudicating those matters. Cf. Byars v. City of Waterbury, 2001 WL 1561109, *10 (Conn.Super. Nov. 19, 2001) (minor plaintiffs challenging constitutionality of school dress code failed to present evidence necessary to allow adjudication of their claims). Accordingly, I do not reach, or intimate any opinion on, any issue other than the one presented by the parties' Stipulation of

exempt plaintiff's son from the mandatory parts of the seventh grade health course and therefore grant their motion for summary judgment on plaintiff's first and second claims for relief under federal law. I do not reach any issue raised by plaintiff's third and fourth claims for relief under state law, which are dismissed without prejudice to their pursuit in state court.[4]

*Facts*

The parties have stipulated to the following facts. Plaintiff and his son Corky reside in Fairfield, where Corky attends public school. In December 1998, when Corky was in seventh grade, plaintiff sought an exemption for his son from the fourth quarter of a mandatory health education course.

Defendants require all pupils to complete a health education curriculum in accordance with Conn.Gen.Stat. § 10–16b(a), which provides in pertinent part:

> In the public schools the program of instruction offered shall include at least the following subject matter, as taught by legally qualified teachers, ... health and safety, including, but not limited to, human growth and development, nutrition, first aid, disease prevention, community and consumer health, physical, mental and emotional health, including youth suicide prevention, substance abuse prevention, safety, which may include the dangers of gang membership, and accident prevention.

The curriculum also includes instruction about alcohol, nicotine and drugs, as required by Conn.Gen.Stat. § 10–19(a), which provides:

> The knowledge, skills and attitude required to understand and avoid the effects of alcohol, of nicotine or tobacco and of drugs ... on health, character, citizenship and personality development shall be taught every academic year to pupils in all grades in the public schools; and, in teaching such subjects, textbooks and such other materials as are necessary shall be used.

In addition, the health curriculum includes instruction about AIDS, pursuant to Conn.Gen.Stat. § 10–19(b), which provides:

> [E]ach local and regional board of education shall offer during the regular school day planned, ongoing and systematic instruction on acquired immune deficiency syndrome, as taught by legally qualified teachers. The content and scheduling of the instruction shall be within the discretion of the local or regional board of education. *** [E]ach local and regional board of education shall adopt a policy, as the board deems appropriate, concerning the exemption of pupils from such instruction upon written request of the parent or guardian.

Certain family life topics, made optional under state law, are integrated into defendants' health education curriculum.[5]

---

Facts and briefs—whether under the First and Fourteenth Amendments defendants were obliged to honor plaintiff's request for an exemption for his son.

4. Defendants have pleaded an affirmative defense that the entire case belongs in state court, rather than federal court, because it concerns matters of state and local policy, citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Assuming defendants continue to take that position, I do not agree that *Burford* abstention is proper.

*Cf. Immediato v. Rye Neck School District,* 873 F.Supp. 846, 854 (S.D.N.Y.1995) (abstention not appropriate in case challenging state board of education's mandatory community service requirement).

5. Conn.Gen.Stat. § 10–16c requires the State Board of Education to develop curriculum guides to assist local school boards that choose to establish family life education programs. The statute defines family life education programs as including "family planning, human sexuality, parenting, nutrition

Those topics relate to family life, personal growth and development. *See* Ex. 2.

As permitted by state law, defendants have adopted an opt-out policy whereby a parent can exempt a child from attending lessons on family life topics and AIDS by notifying the school principal. *See* Ex. 1 at 16, 19.

In a written request to defendant Harrington seeking an exemption for his son, plaintiff wrote:

> Corky and I are exercising our Fourteenth Amendment rights in this matter as we both prefer him to be home schooled regarding health, morals, ethical and personal behavior. I believe health, sex, and character development education are all necessary in the course of an individual's life and I have been teaching these things successfully to my children since they were toilet-trained, without the need for government assistance. I am sure your health educators are capable teachers and their ability to instruct their students is not in question here. I, however, as the father, and being sufficiently educated in health, sex, and behavioral issues, feel it is more appropriate that as they enter adolescence I handle this facet of my children's personal growth at home.

Ex. 11.

Harrington responded that, pursuant to Conn.Gen.Stat. §§ 10–16d and 19(b), plaintiff could exempt his son from lessons regarding family life, physical growth and development and AIDS but not from the rest of the course.

Plaintiff's reply took the form of a lengthy letter. Among other things, plaintiff stated:

What is healthy and what is not healthy and how health should be taught are all controversial issues. Rather than leave one of the most important segments of my child's development to fashionable experiments recommended by local government, I choose to continue to educate Corky myself in health, a method which has produced very successful results[.] Ex. 13.

Following an exchange of further correspondence, Corky did not attend the health education course and thus received an "F."

The parties have stipulated that "plaintiff desired to opt out of the health curriculum in its entirety" "for the reasons set forth in Paragraph 18" of their stipulation. Stip. Of Facts ¶ 15. Paragraph 18 of the Stipulation states:

> The plaintiffs contend that the matters taught in health by defendants, from which plaintiffs seek to opt out, are in conflict with plaintiff[']s sincerely held religious, ethical and moral beliefs. Plaintiffs believe that only the plaintiff father has the right to teach core values in the area of plaintiff's son's religious, ethical or moral beliefs and not the Fairfield School system. Plaintiff's religious beliefs and reasons for not wanting to opt out of health are set forth in his affidavit attached hereto as Exhibit 10.

Plaintiff's affidavit, which is thus incorporated into the Stipulation of Facts, includes the following statements:

> While I do not belong to any institutionalized religion, I have religious beliefs which incorporate, in my view, the best from all religions. The basis of my reli-

---

and the emotional, physical, psychological, hygienic, economic and social aspects of family life...." Conn.Gen.Stat. § 10–16c. Separate statutory provisions state that "nothing in sections 10–16c to 10–16f ... shall be construed to require any local or regional

board of education to develop or institute such family life education programs," Conn. Gen.Stat. § 16d, and that "[n]o student shall be required by any local or regional board of education to participate in any such family life program...." Conn.Gen.Stat. § 10–16e.

gious beliefs is Christian, I consider myself to be a Christian, and I was baptized a Catholic.

I take an orthodox religious view on moral and ethical issues, i.e., I do not believe that drugs and tobacco are proper subjects that I want my son's school to teach. My view is that children should be taught just do not engage in drugs and tobacco.

Similarly, my religious view on sex before marriage is that it is something I do not want my sons to be involved in. I teach them abstention because my religious view is that sex should be reserved for marriage when it is appropriate.

I believe in a Creator who is an all-powerful, one God. I believe in the power of prayer to God.

The basis of my religious beliefs is the Golden Rule as taught by Christ and the Ten Commandments which I have found to be prevalent in all religions. The Golden Rule, as taught by Jesus Christ, is particularly important to me because I believe that a successful life is based on the practice of these principles.

My objection to the subjects taught in Health, to which I sought to opt my son Corky out of in the last part of his 7th grade, is that I believe that God has empowered human beings with the right to bring their children up with correct moral principles in dealing with the issues taught in this course, not the school system. I claim the right, and responsibility, to impart those religious values which I have been taught to my children to develop, their moral, ethical, and religious character.

I believe that the way the school system teaches the subjects to which I sought to opt my son out of, is anti-religion. For one example, it doesn't support a married man and woman together as the basic unit of the family. The school teaches that this unit can be comprised of anything or anyone, that anything you say can be a family. This contradicts my religious belief.

Ex. 10.

Given the parties' stipulation, and the contents of plaintiff's affidavit, I accept as a stipulated fact that plaintiff sought to exempt his son from all parts of the health course based on sincerely held beliefs of a religious nature. I also accept as a stipulated fact that his request for an exemption was based in particular on his beliefs that children should be taught not to use drugs or tobacco, that people should abstain from sex before marriage and that the basic family unit is comprised of a married man and woman.

*Discussion*

■ "In any action under 42 U.S.C. § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Plaintiff claims a right to exempt his minor son from the mandatory parts of defendants' seventh grade health course. He bases his claim on the Free Exercise Clause of the First Amendment ("Congress shall make no law ... prohibiting the free exercise" of religion) and the substantive component of the Due Process Clause of the Fourteenth Amendment ("nor shall any State deprive any person of life, liberty, or property, without due process of law").[6]

---

6. Plaintiff does not claim that defendants' refusal to honor his request for an exemption violated procedural due process. His request for an order requiring defendants to clarify the line between the mandatory health curriculum and the optional family life curriculum might be understood as implicating procedural concerns relating to fair notice. However, no issue of procedural due process under the Fourteenth Amendment (or First Amendment due process) is fairly presented by the record considered as a whole and, accordingly, I intimate no opinion on any such possibility.

Opt-out procedures have been adopted by states and school boards with regard to sex education courses, as this case shows. However, courts have rejected parental demands to exempt children from mandatory health courses, which although somewhat value-laden are less so than sex education programs and closer to basic academic subjects. *See Davis v. Page,* 385 F.Supp. 395, 402–06 (D.N.H. 1974) (rejecting free exercise-parental rights challenge to requirement that children attend health education course); *Cornwell v. State Board of Education,* 314 F.Supp. 340, 344 (D.Md.1969) (upholding state's mandatory health education requirement), *aff'd* 428 F.2d 471 (4th Cir.1970). *See also Hopkins v. Hamden Board of Education,* 29 Conn. Supp. 397, 289 A.2d 914 (1971) (upholding mandatory health education requirement prescribed by Conn.Gen.Stat. § 10–16b). They have done so not just in deference to the state's interest in preparing children to lead responsible, healthy lives, but also because of the considerable discretion entrusted to educators to control what occurs within schools, particularly with regard to the academic function. *See generally,* James E. Ryan, *The Supreme Court and Public Schools,* 86 Va. L.Rev. 1335, 1419 (2000) (judicial decisions provide insulation from challenge for the numerous academic decisions school officials and teachers must make about courses to teach, topics to cover, books to assign, lessons to emphasize; if schools were prohibited from inculcating any values whatsoever, such academic decisions themselves would be subject to

constant challenge). Plaintiff has not demonstrated that a different balance should be struck here.

*Standard of Review*

The parties devote considerable attention to the appropriate standard of review to be applied, presumably because they realize it can be dispositive. Plaintiff argues that his free exercise and parental rights claims, taken together, form a "hybrid" claim of the type referred to by the Supreme Court in *Employment Division, Dept. of Hum. Res. of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) and thus command strict scrutiny.[7] He also contends that strict scrutiny is the proper level of review in light of the Supreme Court's recent decision in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), holding that a state nonparental visitation statute unconstitutionally infringed on the fundamental right to make decisions concerning the care, custody and control of children. If plaintiff's approach were followed, defendants would have to demonstrate that their refusal to exempt Corky from the mandatory parts of the health course was necessary to serve a compelling state interest.

Defendants contend that strict scrutiny is not appropriate in this case because plaintiff's free exercise-parental rights claim is substantially different from the "hybrid" claim referred to in *Smith* and does not involve the fundamental right at issue in *Troxel.* They say that their refusal to exempt Corky must be sustained because it was reasonably related to serving legitimate educational objectives. I

---

7. *Smith* concerned a free exercise challenge to an Oregon statute that included religiously-inspired use of the hallucinogenic drug peyote within the reach of its general criminal prohibition on the use of the drug. *See Smith,* 494 U.S. at 874, 110 S.Ct. 1595. In upholding the law, the Court rejected the argument that heightened scrutiny was applicable and distinguished the case from several prior free exercise cases in which it had applied heightened scrutiny, stating that "[t]he present case does not present ... a hybrid situation, but a free exercise claim unconnected with any communicative activity or parental right." *Id.* at 882, 110 S.Ct. 1595.

agree with defendants that their refusal to honor plaintiff's request for an exemption need not be justified by a compelling state interest.

■ Neither component of plaintiff's free exercise-parental rights claim, standing alone, would command strict scrutiny. In *Smith*, the Court ruled that to survive a free exercise challenge, a facially neutral law of general applicability need not be justified by a compelling state interest, even if it substantially burdens religiously motivated conduct. 494 U.S. at 885, 110 S.Ct. 1595. That ruling overturned the test for free exercise claims set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), which asked whether the challenged law substantially burdened a religious practice and, if so, whether the burden was justified by a compelling state interest.

■ Supreme Court precedent is less clear with regard to the appropriate standard of review of parental rights claims. However, the Second Circuit has concluded that a parental rights challenge to a school's mandatory community service requirement warranted only rational basis review. *Immediato*, 73 F.3d at 461. *Troxel* does not establish a different rule requiring strict scrutiny of parental challenges to educational policies of public schools. *See Littlefield v. Forney Independent School District*, 268 F.3d 275, 289–91 (5th Cir.2001). Accordingly, I follow *Immediato* and conclude that plaintiff's parental rights claim, if presented independently, would require only rational basis review.

This leaves plaintiff's contention that his constitutional challenge to defendants' action commands strict scrutiny because of its "hybrid" nature—that is, because it is based on both the Free Exercise Clause and the Due Process Clause. In *Smith*, the Court noted that its previous decisions rejecting application of a neutral, general-

ly applicable law to religiously motivated activity all involved not just the Free Exercise Clause alone, but that Clause in conjunction with other constitutional provisions. 494 U.S. at 881, 110 S.Ct. 1595. Of pertinence to the present case, the Court cited *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), which invalidated a compulsory school attendance law as applied to traditional Amish parents who refused on religious grounds to send their children to school beyond the eighth grade. The Court stated that *Smith* did not involve such a "hybrid situation." 494 U.S. at 881, 110 S.Ct. 1595.

Plaintiff contends that when, as here, a court is faced with a "hybrid claim" invoking free exercise and parental rights, *Smith* requires that the challenged action be subjected to strict scrutiny and invalidated unless it is justified by a compelling state interest. I disagree.

The Second Circuit views the language in *Smith* regarding "hybrid" claims as dicta and has not decided whether claims based on more than one constitutional provision require greater justification than each component of the claim taken separately would command. *See Knight v. Connecticut Department of Health*, 275 F.3d 156, 167 (2d Cir.2001). Several other courts of appeals have analyzed whether free exercise-parental rights claims command strict scrutiny by breaking down the hybrid and determining the viability of the component claims. *See, e.g., Swanson v. Guthrie*, 135 F.3d 694, 698–701; *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 533–35, 538; *see also Miller v. Reed*, 176 F.3d 1202, 1204 (9th Cir.1999) (free exercise claim combined with interstate travel claim not a hybrid requiring strict scrutiny because interstate travel claim not colorable). Another has simply rejected the hybrid rights analysis suggested by *Smith*. *See Kissinger v. Bd. Of*

*Trustees of Ohio State Univ.*, 5 F.3d 177, 180 (6th Cir.1993).

Analysis of this issue is aided by the district court's opinion in *Littlefield v. Forney Independent School District*, 108 F.Supp.2d 681 (N.D.Tex.2000), *aff'd* 268 F.3d 275 (5th Cir.2001). In that case, the court ruled that a school board's policy requiring children to wear uniforms, which allegedly interfered with free exercise and parental rights, was subject only to rational basis review because that was the proper level of review for each component of the free exercise-parental rights claim. *Id.* at 703. Based on careful examination of the opinion in *Smith*, the court rejected the notion that any hybrid claim commands strict scrutiny simply because of its hybrid nature and concluded that a free exercise-parental rights claim does not command strict scrutiny if it is qualitatively different from the claim presented in *Yoder*. *See* 108 F.Supp.2d at 706.

■ I agree that plaintiff's claim does not command strict scrutiny just because it invokes more than one constitutional provision. *Smith* plainly holds that neutral laws of general applicability do not have to be justified by a compelling state interest even if they substantially burden religiously motivated activity. *Smith* abrogated *Sherbert's* compelling interest test to avoid "a system in which each conscience is a law unto itself or in which judges weigh the social importance of all laws against the centrality of all religious beliefs." *See* 494 U.S. at 890, 110 S.Ct. 1595. Thus, whatever *Smith's* reference to "hybrid" claims might ultimately prove to mean in the free exercise-parental rights area, the scope of any exception to its holding must be limited to claims like the one in *Yoder*.

In *Yoder*, the Court exempted the Amish plaintiffs from a state-mandated high school attendance requirement that conflicted with, and threatened to undermine, the Amish community's religious way of life. The Court thought the Amish plaintiffs made a "convincing showing, one that probably few other religious groups or sects could make...." 406 U.S. at 235–36, 92 S.Ct. 1526.

Accepting as a stipulated fact that plaintiff's objection to the mandatory parts of defendants' seventh grade health course has a religious basis, the quality of his claim is readily distinguishable from the quality of the claim of the Amish parents in *Yoder*. Plaintiff has made no showing that his son's participation in the mandatory parts of the health course would have conflicted with his religious beliefs or practices. He has not shown that his son would have been taught something at odds with his religion, or indeed that the content of the mandatory parts of the course would have conflicted with anything he teaches his son.

Plaintiff explains that he believes "other individuals deserve respect because they are made in the image and likeness of God, ... that self-esteem comes from living a life in accordance with the will and commandments of God, ... that the answer to drugs, alcohol, and tobacco is to understand that our bodies are temples of the Holy Spirit, ... [and] that all of these matters need to be ... understood within a religious, moral and ethical context." *See* doc. 22 at 5. He argues that these governing principles, which he has instilled in his son, are incompatible with the following topics covered in defendants' seventh grade health education course (referred to in the curriculum as "goals"):

1. Defining self-esteem;

2. Grieving and feelings about death;

3. The definition of love and defining different kinds of love and how love and affection influence behavior;

4. The qualities of successful people;

5. Myths and facts about tobacco, marijuana and alcohol;

6. Discussions about drinking alcohol;

7. Discussions about using drugs and social pressures to use drugs;

8. Discussions about the negative consequences of using drugs, marijuana, and alcohol;

9. Explanations of alcohol and alcoholism;

10. Discussions about tobacco products;

11. Discussions about the harmful effects of marijuana;

12. Identifying high risk behaviors and measures for protecting against them;

13. Practicing social pressure resistance skills;

14. Respect for others feelings, rights, and differences;

15. Discussion of behaviors which demonstrate respect for self and others;

16. Discussing responses to being sexually harassed;

17. Demonstrating the ability to set personal goals; and

18. Discussing the habits of highly effective people.

See doc. 22 at 4–5; Ex. A at ¶¶ 15, 18.

It is not apparent from plaintiff's submissions that the foregoing goals of the health education curriculum are inconsistent with his religious beliefs or practices.[8] In contrast to the clear conflict between the fundamentally isolationist beliefs of the Amish and the compulsory high school attendance requirement challenged in *Yoder*, the religious precepts plaintiff has articulated do not appear to be inconsistent with any of the goals just listed. Moreover, despite my explicit request that he do so, plaintiff has not supplemented either the parties' stipulation of facts or his original memorandum to provide more specifics to support his claim.[9]

Plaintiff does not assert that his religious beliefs demand a degree of isolation from the contemporary world, such that exposing his son to ideas that offend those

---

**8.** Plaintiff's affidavit expresses his strong objections to a discussion about body-cavity ingestion of illegal drugs that he alleges occurred in his son's fifth grade health class, a video about breast and penis size that he alleges was shown to a seventh grade health class, and a sexual harassment video that he alleges was shown to an eighth grade health class. However, he offers no evidence that the drug-ingestion discussion and videos referred to in his affidavit would have been part of his son's mandatory health course in seventh grade. In the absence of such evidence, I will not assume that the videos would have been part of the required course, rather than part of the optional lessons. Moreover, even assuming the mandatory drug course would have included some discussion of body-cavity ingestion of illegal drugs, the complete list of the seventh grade health education curriculum goals with regard to the subjects of drugs and tobacco shows that the lessons of the curriculum on this topic would reinforce plaintiff's teaching that drugs are harmful and should not be used.

**9.** *See* Tr. of Telephone Conference [doc. # 33] at 26. In response to my request, plaintiff has filed a supplemental memorandum that adds little to his case. In his supplemental brief, plaintiff states "It is clear from the subjects listed in parts of the health curriculum to which [he] object[s], that they are teaching matters that [he] believes should be reserved solely for him to teach his son. The parties have already submitted to the court those sections of the health curriculum to which the Plaintiffs object including the definition of self esteem, identifying feelings associated with loss and death, defining love, recognizing two different kinds of love, demonstrating the similarities between using marijuana and alcohol, recognizing alternatives to drinking alcohol, and many other subjects which do not relate to any academic subject matter which [he] believe[s] Defendants can legitimately claim as required matters for [his son]." Pl.'s Supp.Mem. at 2–3.

beliefs would burden his religious practice. *Cf. Mozert v. Hawkins County Board of Educ.*, 827 F.2d 1058, 1068 (6th Cir.1987) (upholding against free exercise attack public school's use of a reader containing material that plaintiffs found offensive to their religious views on grounds that exposure was insufficient to constitute a Free Exercise violation). Plaintiff's dispute with the School Board arises out of his desire to keep his son in public school, rather than from a religiously-motivated desire to prevent his exposure to worldly influences.[10]

*The Merits*

■ There can be no question that defendants' mandatory health curriculum serves a legitimate state interest. Education is among the state's quintessential functions. *See Ambach v. Norwick*, 441 U.S. 68, 80, 99 S.Ct. 1589, 60 L.Ed.2d 49 (1979); *Yoder*, 406 U.S. at 221, 92 S.Ct. 1526; *Brown v. Board of Education*, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954). In *Yoder*, the Supreme Court found the state's interest in education "compelling" because education prepares young people "to be self-reliant and self-sufficient participants in society." 406 U.S. at 221, 92 S.Ct. 1526. In *Immediato*, the Second Circuit recognized this interest as extending to the teaching of "values and habits of good citizenship" and the "social responsibilities" of citizens. 73 F.3d at 462

(citing *Norwick*, 441 U.S. at 80, 99 S.Ct. 1589).

Defendants' health curriculum is reasonably related to serving legitimate educational objectives. One of the program's primary goals is to provide young people with the capacity to "obtain, interpret and understand basic health information and services" and the "competence to use such information and services in ways that are health enhancing." *See* Ex. 2. Indeed, a health education requirement in public schools constitutes a "public health measure." *Cornwell*, 314 F.Supp. at 344. I therefore conclude that defendants' refusal to exempt plaintiff's son from the mandatory parts of the seventh grade health course survives plaintiff's constitutional challenge.[11]

Plaintiff emphasizes that health is not a basic academic subject. The Supreme Court's public school cases may be viewed as "providing insulation from challenge for the numerous academic decisions that school officials and teachers must make." *Ryan, supra*, 86 Va.L.Rev. at 1419. The cases provide breathing space for educators to make decisions relating to many academic subjects, not just the most basic ones like reading and arithmetic. Even assuming there are some subjects that are so value-laden and far removed from traditional academic subjects as to be beyond the scope of the educator's privilege to

**10.** At times, plaintiff seems to argue that he is entitled to relief—not because the mandatory parts of the seventh grade health course conflict with his religious views—but because the goals of the health curriculum are not taught from a religious perspective. To the extent his claim is based on that concept, it is unavailing. *Cf. Bowen v. Roy*, 476 U.S. 693, 699, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) ("Never to our knowledge has the Court interpreted the First Amendment to require the Government itself to behave in ways that the individual believes will further his or her spiritual development or that of his or her family.").

**11.** Even if plaintiff's claim commanded more than rational basis review, it would still be unavailing. *See Davis*, 385 F.Supp. at 404–05 (finding that the state "has a paramount and recognized duty to provide for the health, welfare, and safety of its citizens," and that "[t]he health course, which is secular in nature and purpose, is a proper means by which the state can discharge this duty"); *Cornwell*, 314 F.Supp. at 344 (finding that "the State's interest in the health of its children outweighs claims based upon religious freedom and the right of parental control").

manage academic affairs, defendants' mandatory health course plainly is not one of them. This is a course the legislature has required public schools to teach for thirty years.

Plaintiff argues that he does not seek to alter the health education curriculum but rather the more modest relief of an exemption from the health education requirement for his son. However, the problem is not that simple. If defendants were required by law to grant plaintiff's request, then any parent would be able to exercise a right to have his or her child excluded from the mandatory parts of the health course or another required course to which the parent objected. Plaintiff has not shown that defendants could accommodate his request in this case without having to accommodate parents objecting to other curriculum requirements. Giving each parent a veto over required courses or lessons would undermine the state's authority to establish a minimum course of study for its youth.[12]

A parent who objects to a public school's mandatory curriculum is not required by law to keep his child in the school. For many parents, the options of private school or home schooling may be unrealistic. Nevertheless, under the law as it exists today, parents of public school students do not have a constitutional veto over decisions of school officials concerning the contents of required courses. *Cf. Brown,* 68 F.3d at 533. Nor do they have a right to rely on a public school to provide instruction in some required courses while they provide home schooling in other required courses. *See Swanson,* 135 F.3d at 699–700. Extending such rights to parents under the federal constitution would lead to a system in which it would be very difficult for educators to fulfill their vital function. Accordingly, plaintiff's claim that defendants were required to grant his son an exemption from the mandatory parts of the seventh grade health course must fail.

*Pendent State Law Claims*

Defendants argue that the court should decline to exercise supplemental jurisdiction over those claims. I agree and therefore dismiss those claims without prejudice.

*Conclusion*

For the reasons stated above, plaintiff's motion for summary judgment is denied, defendants' motion for summary judgment is granted, the federal claims raised in the first and second claims for relief are dismissed with prejudice, and the state law claims raised in the third and fourth claims for relief are dismissed without prejudice.

It is so ordered.

---

12. Several circuits, including the Second Circuit, have upheld the authority of local school boards to determine curriculum requirements. *See Immediato,* 73 F.3d at 462; *Brown,* 68 F.3d at 533 ("We do not think, however, that this freedom encompasses a fundamental constitutional right to dictate the curriculum at the public schools to which [parents] have chosen to send their children."); *Fleischfresser v. Directors of School District 200,* 15 F.3d 680, 686 (7th Cir.1994) (upholding school's required readings from school reader that offended parents with certain religious views and recognizing "the broad discretion of a school board to select its public school curriculum"); *Sherman v. Community Consolidated School District 21 of Wheeling Township,* 980 F.2d 437, 445 (7th Cir.1992) ("Government ... retains right to set the curriculum its own schools" bounded only by the Establishment Clause); *Mozert,* 827 F.2d at 1064–65. *See also State v. DeLaBruere,* 154 Vt. 237, 264, 577 A.2d 254 (1990) (recognizing State's "compelling interest in the minimum course of study").