### Erwin L. RUPERT

v.

### CITY OF PORTLAND.

Supreme Judicial Court of Maine.

Argued Jan. 9, 1992.
Decided Feb. 28, 1992.

**64**

Erwin L. Rupert, pro se (orally).

Donna M. Katsiaficas (orally), Natalie L. Burns, City of Portland, Francis E. Ackerman, Amicus Curiae, Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

In this action plaintiff Erwin L. Rupert seeks to recover from the City of Portland a marijuana pipe seized by the Portland police as drug paraphernalia. Rupert claims that the confiscation of the pipe pursuant to the Drug Paraphernalia Act, 17–A M.R.S.A. § 1111–A (1983), violated his right to the free exercise of religion guaranteed by both the Maine and the United States Constitutions. Rejecting Rupert's constitutional claims, the Superior Court (Cumberland County, *Cole, J.*) entered judgment for the City, and we affirm.

### I.

On December 6, 1990, Rupert was walking away from the Portland Public Library when he was stopped by a Portland police officer for allowing his dog, "Little Bear," to run at large. Upon frisking Rupert, the officer found a container of vegetable matter and took Rupert to the police station to be searched. The search produced a small amount of marijuana and a pipe containing marijuana residue. The marijuana pipe and bag were wrapped in a United Nations flag and bore a metal tag inscribed "No. 87–2, N.W.C. Inc." The police seized the pipe and the marijuana. Subsequently, the City filed two civil complaints against Rupert, one for possession of less than 1¼ ounces of marijuana and the other for allowing his dog to run at large. Those civil complaints were later dismissed when no police officer appeared in court for the scheduled hearing. Rupert then wrote to the police department requesting the return of his marijuana pipe. The police refused to return the pipe on the ground that it was drug paraphernalia under the Drug Paraphernalia Act,[1] and that the Act em-

---

1. Subsection 1 of the Drug Paraphernalia Act, 17–A M.R.S.A. § 1111–A (1983), provides in part that:

    As used in this [Act] the term "drug paraphernalia" means all equipment, products and materials of any kind which are used or intended for use in ... ingesting, inhaling or otherwise introducing into the human body a scheduled drug in violation of this chapter [17–A M.R.S.A. §§ 1101–1116 (1983 & Supp.

1991)] or Title 22, section 2383. It includes, but is not limited to:

    ....

    K. Objects used or intended for use in ingesting, inhaling or otherwise introducing marijuana, ... into the human body, such as:
     (1) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes....

    Subsection 4 of the Act, 17–A M.R.S.A. § 1111–A(4), provides in part that: "It is unlawful for any person to use, or to possess with

powered the law enforcement officers to confiscate it as contraband.

Rupert admits that at the time the police confiscated his pipe, he used it to smoke marijuana and that he seeks now to recover the pipe so that he may resume his use of it for that purpose. He concedes, as he must, that the pipe is "drug paraphernalia" as the term is defined in the Drug Paraphernalia Act. He argues, however, that because he smokes marijuana only for religious purposes, his use of the pipe is protected by the Free Exercise Clauses of Article I, section 3, of the Maine Constitution and the First Amendment to the Constitution of the United States.

Rupert is a clergyman of the Native American Church of the United States of America. He describes the manner of worship of his church as "shamanic"; "church members experience the deity of nature by ritually ingesting psychedelic plants" and "bear true faith in the sacrality of marijuana." His marijuana pipe is a registered medicine pipe of the New World Church, albeit Rupert himself as the secretary and sole member of that church is the "medicine pipe registrar." He contends that "[t]he pipe is central to Native American worship and constitutes the altar from which prayers ascend to God." Rupert

holds a Master of Divinity degree from Harvard University,[2] for which he wrote a thesis on the historical use of hallucinogenic mushrooms in Indian religion. Over the years Rupert has had a considerable amount of correspondence with the United States Drug Enforcement Administration (DEA), in which he has sought, without success, to obtain religious exemptions for various scheduled drugs. He has sought an exemption for the use of methylenedioxymethamphetamine, the claimed deity of the New World Church of which he is the sole member; an exemption also for use of "North American Deity Psilocybin Mushrooms" in holy communion in that church; and an exemption for the use of marijuana in the Rastafarian Church of America founded by him.

## II.

■ A recent decision of this court, *Blount v. Department of Educational & Cultural Services*, 551 A.2d 1377 (Me. 1988), is here controlling authority adverse to Rupert's appeal so far as the Maine Constitution is concerned.[3] By *Blount*, a person challenging a government regulation as a violation of the Free Exercise Clause of the Maine Constitution[4] has the

---

intent to use, drug paraphernalia to ... ingest, inhale or otherwise introduce into the human body a scheduled drug in violation of this chapter or Title 22, section 2383."

Subsection 9 of the Act, 17–A M.R.S.A. § 1111–A(9), provides that: "Any drug paraphernalia possessed in violation of this section is declared to be contraband and may be seized and confiscated by the State."

17–A M.R.S.A. § 1102(4)(B) (1983) provides that marijuana is a schedule Z drug.

**2.** Rupert informs us that he also is a graduate of the United States Air Force Academy and a former U.S. Air Force officer and is a graduate of Georgetown University Law Center.

**3.** In the *Blount* case, in which the parents contended that State regulation of their children's home schooling violated the Free Exercise Clauses of both the United States and the Maine Constitutions, our analysis used the "four-stage framework" previously developed by the United States Supreme Court for First Amendment claims, and we rejected the Blounts' argument that the Maine Constitution gives broader protection than the United States Constitution. *See*

*Blount v. Department of Educational & Cultural Services*, 551 A.2d 1377, 1379, 1385 (Me.1988). After our 1988 decision in *Blount* the Supreme Court in *Employment Div., Dept. of Human Resources v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), abandoned the "four-stage framework" analysis and laid down a simpler test for compliance with the federal Free Exercise Clause. *See* Part III of this opinion. We have no reason in this case to decide whether we in applying the Maine Free Exercise Clause will change course to follow the Supreme Court's lead in *Smith*.

**4.** The Maine Constitution provides in Article I, section 3:

All individuals have a natural and unalienable right to worship Almighty God according to the dictates of their own consciences, and no person shall be hurt, molested or restrained in that person's liberty or estate for worshipping God in the manner and season most agreeable to the dictates of that person's own conscience, nor for that person's religious professions or sentiments, provided that that person does not disturb the public peace,

burden of showing: "1) that the activity burdened by the regulation is motivated by a sincerely held religious belief; and 2) that the challenged regulation restrains the free exercise of that religious belief." *Id.* at 1379. If the challenger makes those showings, "the burden shifts and the State can prevail only by proving both: 3) that the challenged regulation is motivated by a compelling public interest; and 4) that no less restrictive means can adequately achieve that compelling public interest." *Id.*

■ On Rupert's appeal from the adverse summary judgment, we must treat as true Rupert's allegations that he uses the confiscated marijuana pipe in the exercise of a sincerely held religious belief. Rupert thus has for present purposes carried his burden of meeting both of the first two requirements of *Blount.* For the City to defend the summary judgment entered in its favor, the burden shifts to the City and it must show both that the Drug Paraphernalia Act is motivated by a compelling public interest and that there is no less restrictive means of achieving that compelling public interest. Here the City has satisfactorily made the last two showings required by *Blount.*

In the first place, Maine plainly has a compelling public interest in preventing the distribution and use of illegal drugs, including marijuana, a schedule Z drug, 17–A M.R.S.A. § 1102–(4)(B) (1983). The Maine statutes, which *inter alia* make unlawful the possession of any usable amount of that scheduled drug, *see* 22 M.R.S.A. § 2383 (Supp.1991), represent the legislature's determination that marijuana poses a threat to individual health and social welfare.[5] The First Circuit has made exactly the same comment in regard to the comparable federal statutes:

> Every federal court that has considered the matter ... has accepted the congressional determination that *marijuana in fact poses a real threat to individual health and social welfare,* and has upheld the criminal sanctions for possession ... of marijuana even where such sanctions infringe on the free exercise of religion.

*United States v. Rush,* 738 F.2d 497, 512 (1st Cir.1984) (emphasis added). The Drug Paraphernalia Act is an important component of the State's comprehensive statutory scheme for the control of illegal drugs. That Act, adopted in Maine in 1981, is based on the DEA's Model Drug Paraphernalia Act, proposed for the purpose of promoting uniform regulation of drug paraphernalia nationwide. The Model Act has been enacted in at least 38 states and by the District of Columbia to deal with the problems caused by the drug paraphernalia industry, an industry that the Congressional Select Committee on Narcotics Abuse and Control characterizes as "a severe threat to the educational, social and emotional development of our youth." K. Healey, *Issues and Practices in Criminal Law: State and Local Experience with*

---

nor obstruct others in their religious worship;—and all persons demeaning themselves peaceably, as good members of the State, shall be equally under the protection of the laws, and no subordination nor preference of any one sect or denomination to another shall ever be established by law, nor shall any religious test be required as a qualification for any office or trust, under this State; and all religious societies in this State, whether incorporate or unincorporate, shall at all times have the exclusive right of electing their public teachers, and contracting with them for their support and maintenance.

5. Marijuana and any activity connected with it are subject to a comprehensive set of statutes, enforced by both criminal and civil penalties, designed to prevent marijuana use. Possession of a usable amount of marijuana is made a civil violation by 22 M.R.S.A. § 2383 (Pamph.1990). P.L.1989, ch. 344, § 3(1), increased the penalty for such illegal possession of marijuana to $200–$400 for a first offense and to $400 for every subsequent offense within a six-year period.

As a schedule Z drug, 17–A M.R.S.A. § 1102(4)(B), marijuana is "declared contraband, and may be seized and confiscated by the State," *id.,* § 1114, and trafficking in and furnishing of marijuana and acquiring the illegal drug by deception or theft are made crimes by *id,* §§ 1103(2)(C), 1105, 1106, 1108 (1983 & Supp.1991). The comprehensive statute providing for the forfeiture to the State of firearms, conveyances, and other materials and property applies fully to marijuana the same. as other scheduled drugs, except for the forfeiture of real estate. *See* 15 M.R.S.A. § 5821 (Supp.1991).

*Drug Paraphernalia Laws,* 1988 Nat'l Inst.Just. 1. The Drug Paraphernalia Act is part of the State's effort on many fronts to eliminate illegal drugs by making it unlawful for any person to use drug paraphernalia, including pipes, to inhale marijuana or other scheduled drugs, and by declaring those devices to be contraband subject to confiscation.

The City has also met its second burden of showing that Maine's regulation of drug paraphernalia as applied to Rupert's marijuana pipe is the least restrictive means by which the compelling public interest in controlling drugs and drug paraphernalia can be accomplished. The least-restrictive-means test requires the court to do a balancing analysis:

> [T]he [City] must prove that all less restrictive means advanced by [Rupert] would cause too much harm to the public interest in [drug control] to justify the increased benefit to [Rupert's] exercise of religion. The [City] need not meet the impossible standard of proving that no adequate less restrictive alternative *can* be developed, only that none *has* been proposed.

*Blount,* 551 A.2d at 1382 (emphasis in original) (citations omitted).

Rupert proposes a scheme by which he would give notice to the police or the courts of his intention to use the pipe for smoking marijuana exclusively in the exercise of his religion and the pipe would then be identified with a tag that would permit Rupert to smoke marijuana in it. Rupert in his proposal is not seeking an exemption so that he may regain possession of the marijuana pipe merely for its ornamental or sentimental value to him or for the smoking of lawful substances, but rather he is seeking an exemption for the smoking of marijuana in this particular pipe. His scheme implies that the State should make a religious exemption not only for possession of drug paraphernalia, but also for the possession of marijuana in quantities determined by the religious dictates of the user, and even

for the furnishing of that marijuana to the user. The State in its amicus brief argues convincingly that the compelling public interest in prohibiting the use of scheduled drugs, including marijuana, can be adequately served only by rules of general application and that a religious exemption of the breadth here sought would severely hamper the public's effort to control the amount of marijuana in circulation in Maine.

> It would be difficult to imagine the harm which would result if the criminal statutes against marihuana were nullified as to those who claim the right to possess and traffic in this drug for religious purposes. For all practical purposes the anti-marihuana laws would be meaningless, and enforcement impossible.

*Leary v. United States,* 383 F.2d 851, 861 (5th Cir.1967). We are unwilling to read the Maine Constitution to compel an exemption that would so seriously compromise law enforcement efforts to deal with a problem that the legislature has determined is a threat to the health and welfare of our citizens.

### III.

■ By recent controlling authority of the United States Supreme Court, the Free Exercise Clause of the United States Constitution [6] also provides no protection for Rupert's use of his marijuana pipe for religious purposes. In *Employment Div., Dept. of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Supreme Court held that laws of general application that burden a particular religious practice, if enacted without hostility to religion, need not be justified under the First Amendment by a compelling governmental interest. The Court stated that the "right of free exercise of religion does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)" and that "if prohibiting the exercise of religion

---

**6.** The First Amendment to the Constitution of the United States provides in pertinent part: "Congress shall make no law respecting an es-

tablishment of religion, or prohibiting the free exercise thereof...."

... [is] merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." *Id.* at 885, 886 (quotations omitted). Since the Drug Paraphernalia Act plainly is a statute of general application not hostile to religion, Rupert has no plausible First Amendment argument.

Rupert tries to distinguish the case at bar from *Smith* on the ground that *Smith* involved a criminal statute and thus does not apply to his challenge to the Drug Paraphernalia Act which makes possession of drug paraphernalia only a civil violation. But as the Third Circuit has noted, "the rationale of the *Smith* opinion is not logically confined to cases involving criminal statutes." *See Salvation Army v. New Jersey Dept. of Community Affairs,* 919 F.2d 183, 194–98 (3d Cir.1990). Other circuits have similarly applied the *Smith* holding to civil statutes. *See, e.g., St. Bartholomew's Church v. City of New York,* 914 F.2d 348 (2d Cir.1990) (New York City's landmark preservation law); *Intercommunity Center for Justice & Peace v. I.N.S.,* 910 F.2d 42 (2d Cir.1990) (federal immigration law).

Confiscation of Rupert's marijuana pipe does not violate the Free Exercise Clause of either the Maine Constitution or the First Amendment.

The entry is:

Judgment affirmed.

All concurring.