Sammy **PELLETIER**, et al., Plaintiffs,

v.

**MAINE PRINCIPALS' ASSOCIATION,** et al., Defendants.

**No. CIV. 03–70–P–H.**

United States District Court, D. Maine.

May 9, 2003.

Darren A. Jones, Esq., James R. Mason, III, Esq., Michael P. Farris, Esq., Home School Legal Defense Association, Purcellville, VA, Stephen C. Whiting, Esq., Whiting Law Firm, P.A., Portland, ME, for Plaintiffs.

Joanne H. Pearson, Esq., Margaret C. LePage, Esq., Pierce, Atwood, Portland, ME, for Defendants.

## MEMORANDUM DECISION

HORNBY, District Judge.

If students being educated at home wish to participate in interschool athletic contests, must the State let them choose which school to represent? In Maine, parents can educate their children in public schools, private schools, or home schooling. 20–A M.R.S.A. § 5001A (3).[1] Maine also requires that local public high schools allow home-schooled students in their respective attendance areas to participate in their athletic programs. § 5021(5). The Pelletier family, however, wants their home-schooled children to compete in track, not for their local public high school, but for the Seacoast Christian School. I conclude that regardless of the policy mer-

1. For 2001, the most recent year for which numbers are available, there were 211,000 Maine students in public schools; 16,900 in private schools, and 4,595 in home schooling. For the high school level only, there were 67,500 in public schools, 9,184 in private schools and 1,131 in home schooling. Joint Stipulation of Facts, ¶¶ 31–32 (Docket No. 29) (Joint Stipulation).

**12**

its of allowing such a choice, it is not constitutionally required.

## FACTS

The dispute is submitted for final decision on a stipulated record,[2] following oral argument on May 8, 2003. The Maine Principals Association (MPA) runs inter-school programs in Maine, including inter-scholastic athletics. For purposes of this lawsuit only, the MPA has conceded that it should be treated as a state actor.[3]

For religious reasons, Dr. Sammy and Susan Pelletier educate their children, Douglas and Laura, in an approved program at home. Douglas, a senior, will attend West Point Military Academy this fall; Laura is in grade 8. Both excel at track. Because of the Pelletiers' residence in Wells, Maine, Maine statutes and the MPA bylaws[4] require the Wells High School to permit Pelletier family members to participate in its track program if they otherwise qualify. For religious reasons, however, the Pelletier family does not want Douglas and Laura to be part of the Wells High School athletic program.[5] Instead, they share the religious aspirations of the Seacoast Christian School about young people and athletics, and wish Douglas and Laura to compete along with Seacoast students.[6]

Maine statutes do not require that private schools admit home-schooled students to their athletic programs. The Maine Principals Association does not permit private schools (or, for that matter, other public schools outside the relevant attendance area) to field unenrolled home-schooled athletes except as exhibition participants.[7] Students like Douglas and Lau-

---

2. The record is stipulated with one exception, having to do with what the Pelletiers' religion requires. On that issue, the parties have presented deposition transcripts and agreed that I shall resolve any differences, without an evidentiary hearing. I find it unnecessary to do so, however, see footnote 14, *infra*.

3. This appears to be an appropriate concession in light of the United States Supreme Court decision in *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), although the MPA argues that there are distinctions between it and the Tennessee Secondary School Athletic Association.

4. MPA By-laws, Art. III §§ 2(B)(4), (I) (Durost Decl., Ex. B (Docket No. 12)).

5. The Pelletiers have allowed Douglas, who is 18, to make his own decision in this regard. Because Laura is in grade 8, she is not yet eligible to participate in the Wells High School program. At Seacoast, however, Laura is eligible to participate in the program because of the size of the school: the MPA rules permit participation by a grade 8 student when a school has fewer than 40 girls (or boys, as the case may be). *Joint Stipulation* ¶ 21.

6. In addition to the effect on the Pelletiers' religious views, the choice of schools has the following additional consequences: because of Seacoast's small size, the Pelletier students compete in a different interscholastic class and achieve higher individual rankings than they would for Wells High School (Joint Stipulation ¶¶ 36–39); Laura is able to compete, whereas through Wells High School she would be ineligible as an eighth grader (*Id.* at ¶ 21); and Seacoast achieves a higher school ranking in its class because of the Pelletiers' participation (*Id.* at ¶¶ 38–39).

7. Durost Decl. ¶ 20 (Docket No. 12). Prior to the 1990s, there were no Maine statutes giving home-schooled students a right to participate in interscholastic public school activities and home-schooled students were not eligible for MPA-sanctioned competition. In about 1990, the MPA began allowing home-schooled students to compete for the public schools in their communities if the local public school granted explicit approval and agreed to ensure that the student met academic eligibility standards. The MPA adopted detailed academic eligibility guidelines for this purpose. Joint Stipulation at ¶ 24. Then in 1995 the Maine legislature enacted 20–A M.R.S.A. § 5021(5), under which Chapter 130 home-schooled students became eligible to partici-

ra can practice with the teams of private schools that are willing to let them do so, and can compete as exhibition runners in regular school meets, but they cannot qualify for the state championship meet and they do not earn points for the private school's own ranking. Therefore, Douglas and Laura cannot compete in official qualifying events for Seacoast unless they enroll as Seacoast students. The Pelletier family does not wish Douglas and Laura to enroll as Seacoast students.

## ANALYSIS

The Pelletiers mount three major constitutional challenges to the MPA's refusal to let them compete as Seacoast's athletes: (1) that the rule violates their Fourteenth Amendment substantive due process right of parental educational choice; (2) that it violates Seacoast's Fourteenth Amendment right to equal protection of the laws; and (3) that it violates their First Amendment right to free exercise of religion.

pate in activities, including athletics, sponsored by their local public schools. *Id.* at ¶ 25. In response, the MPA amended its eligibility rules. *Id.* at ¶ 26. Under the MPA's interpretation of its enrollment rule, home-schooled students may compete only for their local public high schools. The MPA does not allow home-schooled students to affiliate with private school teams or public school teams outside the community in which the student resides. *Id.* at ¶ 27. The MPA claims that it has consistently applied the eligibility rule, whereas the plaintiffs argue that the MPA has granted permission to some home-schoolers to participate with private school teams. The MPA points out that it relies primarily on self-reporting by members and member complaints to police its rules compliance. *Id.* at ¶ 22. In any event, the parties have agreed that the issue is not material to this dispute, and the MPA now takes the position that when officially aware of a student's status, it interprets the rule as stated. *See id.* at p. 7 n. 6; ¶¶ 22–23.

8. That constitutional principle of parental choice has survived the general discrediting of substantive due process, the original basis

■ **1. Substantive Due Process/Parental Educational Choice.** The Fourteenth Amendment prevents a state from denying parents the right to choose private schools for their children's education. *See Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. State of Nebraska,* 262 U.S. 390, 399–400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (invalidating prohibition of teaching of German in elementary school).[8] But Maine has not restricted the Pelletiers' constitutional right to educational choice. The Pelletiers are free to send Douglas and Laura to public school, or to send them to Seacoast or any other private school, or to educate them at home. They have freely chosen the latter.

■ As for athletics, the Pelletiers concede that there is no fundamental right to athletic participation. Pls.' Reply at 1 (Docket No. 16).[9] Indeed, nothing re-

for decisions like *Meyer* and *Pierce. See, e.g., Troxel v. Granville,* 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. . . . In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody and control of their children."). Religious beliefs can even overcome a state's ability to require the secondary education of youngsters. *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (Old Order Amish).

9. The concession is appropriate. "There is, after all, no independent constitutional right to engage in interscholastic athletics, either as a species of liberty (protected against deprivations independently) or as a species of property (protected against deprivations absent procedural due process), although some courts have recognized that state law may create a

quires the State of Maine to arrange interscholastic athletic programs at all for home-schooled students.[10] In essence, the Pelletiers' argument is that, even though Maine did not have to open interscholastic athletics to home-schooled students, once it did so—thereby recognizing the importance of athletics to education—it was required by *Pierce* to permit home-schooled students to affiliate with a private school even though they choose not to enroll in the private school.

*Pierce* simply does not go that far. *Pierce* struck down a complete ban on private education in Oregon. In Maine, the Pelletiers remain free to enroll their children at a private school like Seacoast with full participation in its athletics program. They are also free to home school their children without athletic competition, or to have Douglas and Laura participate in athletic events that occur outside the MPA-organized interscholastic program. They can even have their children practice with and participate interscholastically on behalf of a private school in which they are not enrolled until the time comes for offi-

cially qualifying events. And nothing prevents private schools from arranging their own interscholastic competitions independent of the MPA under rules that might accommodate families like the Pelletiers. The fact that Maine has gone the extra step and required public high schools to permit home-schooled students to participate in the public school athletic programs and represent the high school at interscholastic events does not "coerce" the Pelletiers as the Oregon Legislature did in *Pierce.* Instead, Maine has attempted to broaden the range of choices, even if not as far as the Pelletiers would like. I conclude that Maine's decision to open the public school athletic programs to home-schooled students without at the same time opening the private school programs does not create a burden on parental educational choice.[11]

Because there is no burden, I do not address the Pelletiers' argument that substantive due process requires strict scrutiny of, and a compelling justification for, the MPA rule.[12] Certainly there is a ra-

protectable interest or that there may be an attendant property interest related to scholarships, future professional participation, or the overall educational process. In fact, government schools or associations are presumably not constitutionally required to establish athletic programs at all, and it is only because they do so that the Constitution's guarantees, such as the Free Exercise Clause, come into play." Scott C. Idleman, Symposium, *Religious Freedom and the Interscholastic Athlete,* 12 Marq. Sports L.Rev. 295, 299 (2001) (citing supporting cases; footnotes omitted).

10. *See, e.g., Bradstreet v. Sobol,* 225 A.D.2d 175, 650 N.Y.S.2d 402 (1996); *Hrycenko v. Allentown School Dist.,* 57 Pa. D. & C. 4th 221 (2000).

11. The Pelletiers concede that Maine could not constitutionally require private schools to allow unenrolled students to participate in their athletic programs. Pls.' Reply at 4 (Docket No. 16). The "right" the Pelletiers seek to enforce is thus limited by the willing-

ness of a private school to accommodate their affiliation without enrollment.

12. At oral argument, the defendants conceded that they have not satisfied the compelling interest standard. But the only basis for imposing the stricter standard is the opinion of a single justice concurring in a case that, unlike this case, involved blatant coercion. *Troxel,* 530 U.S. at 80, 120 S.Ct. 2054 (Thomas, J., concurring) (invalidating state law requiring parent to permit, over objection, visitation by grandparents). Moreover, the First Circuit has not yet required strict scrutiny. *Brown v. Hot, Sexy & Safer Productions,* 68 F.3d 525, 533 (1st Cir.1995) (compulsory attendance at allegedly indecent AIDS and sex education program at public high school; "[T]he Supreme Court has yet to decide whether the right to direct the upbringing and education of one's children is among those fundamental rights whose infringement merits heightened scrutiny. We need not decide here whether the right to rear one's children is fundamental

tional basis for the rule. Reasonable people might differ over whether the private affiliation prohibition is essential, or whether a more flexible rule might be written (based on the family residence's geographic proximity to public or private school, for example). But it is not irrational in the constitutional sense for the MPA to be concerned that freedom of choice for home-schooled athletes could lead to unfair concentration of athletes at a particular private school, and that a residence/public school affiliation is the easiest way to enforce recruitment prohibitions. The concern may be overblown, in others' judgment, but it is not "irrational." I conclude that there is no violation of parental educational choice/substantive due process.

■ **2. Equal Protection of the Laws.** The Pelletiers do not claim that the MPA rules violate their personal equal protection rights. In fact, they have at least as much choice as any public or private school family has in where their children will participate athletically. Instead, the Pelletiers argue that Seacoast Christian School's equal protection rights as a school have been violated and that they, the Pel-

letiers, can make that argument for Seacoast even though Seacoast has chosen not to make it.

I conclude that, in lawyers' terms, the Pelletiers have no "standing" to make Seacoast's equal protection argument. If Seacoast wants to make the argument on its own behalf, it may, but the Pelletiers do not meet the criteria that let a person assert someone else's constitutional rights.[13]

■ **3. Free Exercise of Religion.** The Pelletiers appropriately concede that the MPA rules do not single them out based upon their religion, but instead are religiously neutral rules. Supplementary Stipulation ¶ 39. Ordinarily, a generally applicable law or rule that is religiously neutral is constitutional, even though it may incidentally burden a religious practice. *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 879–80, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Nevertheless, the Pelletiers argue that only a compelling interest can justify the MPA rules because of the MPA rules' impact on their religious beliefs,[14] coupled

because we find that, even if it were, the plaintiffs have failed to demonstrate an intrusion of constitutional magnitude on this right."); *accord, Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 702 (10th Cir.1998) (prohibiting home-schoolers from part-time enrollment in public schools does not violate parental right to control child's education).

13. Specifically, the Pelletiers have not shown that a private school like Seacoast is unlikely or unable to assert its own rights. See *Powers v. Ohio*, 499 U.S. 400, 414, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Singleton v. Wulff*, 428 U.S. 106, 115–16, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir.2002). The Pelletiers argue that Seacoast may be deterred inasmuch as the MPA bylaws provide that if a school sues the MPA and loses, it must pay costs and attorney fees. Fee-shifting arrangements according such

benefits against an unsuccessful litigant are not uncommon. They appear, for example, in most people's home mortgages if collection efforts are required, and they are customary in civil rights litigation. The fee-shifting provision hardly amounts to a burden of the sort that justifies letting another assert a third person's constitutional rights, rather than permit the third person/entity to make its own choice.

14. The defendants challenge whether the Pelletiers' religious beliefs really require them to avoid the Wells High School athletic program or not to enroll Douglas and Laura at Seacoast. Def.'s Supp. Facts ¶¶ 5–7 (Docket No. 30). I avoid this dispute, an area that is fraught with difficulties for judicial decision-making, see Idleman, *supra*, at 303–4 (citing cases), and assume without deciding that the Pelletiers' sincerely held religious beliefs do require them to take the positions on athletic

with parental rights to direct a child's education.[15] I conclude, however (as I did in the substantive due process analysis), that the Pelletiers have not shown any burden on parental direction of children's education.[16] Therefore, I do not reach the stage of assessing whether the MPA can show a compelling reason for its rules.[17] This is not a case like *Pierce*, where the State of Oregon *required* all students to go to public school; Maine is not trying to "standardize its children by forcing them to accept instruction from public teachers only." *Pierce*, 268 U.S. at 535, 45 S.Ct. 571. This is also not a case like *Yoder* where the State of Wisconsin *required* Old Order Amish parents over objection to

send their children to secondary school. The Pelletiers can enroll their children at Seacoast or any other private school they choose. Or they can choose home schooling, as they have. They can choose not to participate in organized athletic programs at all, or to participate on an exhibition basis through private schools that will let them. Or, because the State has made the choice possible, they can have their home-schooled children participate in the full range of interscholastic athletic programs through their local public high school. With all these choices, Maine has not burdened the Pelletiers' free exercise of religion. And I have already ruled that the MPA rule survives rational basis review.[18]

competition that they have taken. (I recognize that the First Circuit was not daunted in *Strout v. Albanese*, 178 F.3d 57, 65 (1st Cir. 1999), deciding what was central to Catholic religious beliefs by citing the Catechism of the Catholic Church.)

15. *Smith*, an employment case, held that such a justification is required when another constitutional right is also involved, a so-called "hybrid" case. ("The only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated actions have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections, such as . . . the right of parents, acknowledged in *Pierce v. Society of Sisters* to direct the education of their children.") 494 U.S. at 881, 110 S.Ct. 1595 (citations omitted); *accord, Michigan v. DeJonge*, 442 Mich. 266, 501 N.W.2d 127 (1993) (requirement of state certified instructors for home schooled students over religious objection is a hybrid case and requires a compelling state interest.) In *Brown v. Hot, Sexy & Safer Productions, Inc.*, 68 F.3d 525, 539 (1st Cir.1995), the First Circuit stated that "allegations of interference with family relations and parental prerogatives do not state a privacy or substantive due process claim. [The parents'] free exercise challenge is thus not conjoined with an independently protected constitutional protection." That is also the conclusion I reach here.

16. That is the essential first question: "It is virtually self-evident that the Free Exercise Clause does not require an exemption from a governmental program unless, at a minimum, inclusion in the program actually burdens the claimant's freedom to exercise religious rights." *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 303, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985).

17. *Accord, Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 698–700 (10th Cir.1998) (religiously neutral rule denying home-schooler part-time enrollment in public school; "The policy does not prohibit [the parents] from home-schooling Annie in accordance with their religious beliefs, and does not force them to do anything that is contrary to those beliefs. The board's policy, therefore, does not violate traditional free-exercise principles." "[I]t cannot be true that a plaintiff can simply invoke the parental rights doctrine, combine it with a claimed free-exercise right, and thereby force the government to demonstrate the presence of a compelling state interest. . . . [I]t at least requires a colorable showing of infringement of recognized and specific constitutional rights, rather than the mere invocation of a general right such as the right to control the education of one's child.")

18. I therefore do not consider what impact a contrary decision, based upon free exercise, would have: for example, would there have to be rules concerning public school students

## Conclusion

Maine has fostered parental choice in education even to the point of opening interscholastic athletic opportunities to home-schooled students. The MPA rule limiting home-schooled students' athletic affiliation to their local public high school may have unhappy consequences for the Pelletier family, and perhaps people of good will could work out a better rule that would accommodate all interests. But I conclude that the MPA rule does not infringe upon the free exercise of religion and parental choice in education, and does not violate the United States Constitution. I therefore DENY the request for injunctive relief, and ORDER the entry of judgment for the defendants on the federal constitutional claims.[19]

I decline to rule on the state constitutional issues, however. Maine's religion clause is worded differently[20] and, the plaintiffs argue, Maine has not decided to follow the United States Supreme Court's *Smith* analysis.[21] Those are issues for the state court. *See* 28 U.S.C. § 1367(c)(1), (3). The case is remanded to the Superior Court (Cumberland County) with any state constitutional issues remaining.

So ORDERED.

who, for religious reasons, do not want to participate in the public school athletic program?

19. The motion for temporary restraining order, the request for preliminary injunction and the motion to dismiss are all MOOT in light of the agreement to submit the matter for final judgment on a stipulated record.

20. Under the Maine Constitution,

All individuals have a natural and unalienable right to worship Almighty God according to the dictates of their own consciences, and no person shall be hurt, molested or restrained in that person's liberty or estate for worshipping God in the manner and season most agreeable to the dictates of that person's own conscience, nor for that person's religious professions or sentiments, provided that that person does not disturb the public peace, nor obstruct others in their religious worship . . . .

Me. Const. art. I, § 3.

21. In 1992, the Maine Law Court stated: "We have no reason in this case to decide whether we in applying the Maine Free Exercise Clause will change course to follow the Supreme Court's lead in Smith." *Rupert v. City of Portland,* 605 A.2d 63, 66 n. 3 (Me.1992). In a later case, *Bagley v. Raymond School Dep't,* 728 A.2d 127, 132 (Me.1999), the parties did not contend that the Maine Constitution gave any greater protection than the United States Constitution, and the Court therefore proceeded "with the understanding that the rights guaranteed by the United States Constitution and the Maine Constitution are coextensive." It is difficult to determine, therefore, whether the Law Court will follow *Smith* when directly confronted with the question.